## THE ESSEX SAVINGS BANK *vs.* THE MERIDEN FIRE INSURANCE COMPANY.

Hartford Dist., Jan. T., 1889. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A mortgagor took out a policy of insurance on a building which was covered by a mortgage that had been foreclosed, but the time limited for redemption had not expired. The application was not in writing and there was no statement as to the condition of the title. Held that he had an insurable interest, and that in the absence of actual fraud the taking of the policy upon the building as belonging to him would not make the policy void.

It was the duty of the insurance company, if it desired to make certain that his interest was that of absolute ownership free from incumbrance, to have inquired of him and obtained his representations to that effect.

The policy contained a provision that it should become void, if, without the assent of the insurance company, the property insured should be sold. Held that, under this provision, the policy became void when the time limited for redemption expired without redemption.

On the day following the expiration of the period for redemption, the mortgagee, a savings bank, passed the following resolution:—" *Voted*—that the time for the redemption by *E. S.* of his property mortgaged to the bank and foreclosed, be extended three months." Held that, as the interest of the mortgagor had become extinguished before this resolution was passed, it was in effect only an agreement to convey to him on his paying the debt within the three months, that as such an agreement it was without consideration and could not have been enforced, and that it could not therefore save the policy from the operation of the clause that made it void on the property being sold.

The policy, "in consideration of $10.28," insured *S* against loss by fire "to the amount of $1,028,—namely, $350 on his frame barn and sheds, $250 on his hay and grain, and $428 on his wagon, carriage and sleighs—all while contained therein." Held that the policy became void, so far as the personal property was concerned, as well as the buildings, when the interest of the mortgagor in the buildings terminated.

After the vote extending the time for redemption was passed and within the time limited by it, the assured took out another policy from the same company upon a granary, which was a part of the foreclosed property, and personal property in it, upon a written application in which the building was represented to be his. Held that the policy was void, as to both the building and the personal property in it.

[Argued January 2d—decided April 25th, 1889.]

ACTION on a policy of insurance against fire; brought to the Superior Court in Middlesex County. The plaintiff held the contract of insurance by assignment from the insured. The court made a finding of the facts and reserved the case for advice. The case is fully stated in the principal opinion, and the points made by the counsel on both sides in argument are fully presented in the prevailing and dissenting opinions.

*E. H. Rogers*, for the plaintiff.

*G. A. Fay*, for the defendant.

PARDEE, J. In March, 1864, Ely Stannard, being the owner of a piece of land situated in the town of Clinton, on which were a barn and sheds, mortgaged the same to the Essex Savings Bank, the plaintiff. In April, 1886, the bank obtained a decree of strict foreclosure, the time of redemption to expire on July 5th following. On the 25th day of June, 1886, Stannard procured from the defendant a policy of insurance in his own name upon the barn and sheds; also upon certain personal property therein; withholding information as to the mortgage and decree of foreclosure. On July 5th following, Stannard not redeeming, the title of the plaintiff became absolute. On July 6th following, the board of directors of the plaintiff at a legal meeting voted as follows:—" *Voted*, that the time for redemption by Ely Stannard of his property mortgaged to the bank and foreclosed, be extended three months from the 6th day of July, 1886. On September 19th following, the building and contents were destroyed by fire. On November 26th following, Stannard, for a valuable consideration, assigned his interest in the contract of insurance to the plaintiff.

The answer of the defendant is in effect that, when applying for the policy, Stannard concealed from it the facts as to the mortgage and foreclosure; that he delivered to it a false account as to his loss with fraudulent intent; and

fraudulently and falsely claimed to be the sole and absolute owner of the property insured and destroyed.

The plaintiff replied that some of these allegations were untrue, and all others immaterial. The case is reserved for the advice of this court.

By the terms of the policy it is void if any material fact or circumstance stated in writing has not been fairly represented by the insured. Upon the finding there was no written representation as to the title, the application having been made verbally.

The policy issued after decree of foreclosure, but before expiration of the limitation for redemption. In legal effect Stannard was the owner. Presumably the buildings were not insured for their full value. Presumably they would, to their full value, assist Stannard in redeeming themselves, together with the land on which they stood; certainly whatever loss would result from their destruction by fire would fall upon him. He had a valuable, therefore an insurable, interest in their preservation. The weight of judicial authority sustains him in the legal right to apply for and obtain a policy of insurance upon the building as his property, in the absence of actual fraud, without thereby making the policy void under the cited provision in that regard, while withholding information as to the foreclosure. If the defendant desired to make it certain that his interest was that of sole and absolute ownership, free from all incumbrance, it should have inquired of him, and obtained his representation to that effect. Not inquiring, it is held as willing to assume the risk contracted for, if he had any insurable interest.

At the expiration of the fifth day of July, 1886, Stannard not having redeemed the mortgaged land, the title thereto became absolute in the plaintiff. It was as completely severed from him as if he, for a valuable consideration to him paid, had executed a warrantee deed thereof with all legal formalities, in favor of the plaintiff, and delivered the same to it on that day, with possession. The agreement of the defendant was one of indemnity to Stannard against loss by reason of

the destruction thereof by fire. It did not agree to pay him the value thereof if destroyed, regardless of who might then be the owner. Only to indemnify him for such loss as he should suffer because of ownership.

This is the essence of every contract for insurance, even without express mention; by the fixed law of legal gravitation, the contract to indemnify for loss by fire falls at the instant when the person purchasing indemnity ceases to have any interest in the thing insured; doubly so in this case, as in this policy it is expressed that it "shall be void * * * if, without such assent, the said property shall be sold * * *." The word "sold" stands for the voluntary transfer of all right or title to, and of all interest in, the land and buildings thereon, by Stannard to another; also for the wresting from him by due process of law of all right or title to, and of all interest in the same, and the vesting thereof absolutely in another; also for his permitting a decree against him for strict foreclosure of his title thereto to become absolute in favor of a mortgagee by his omission to redeem. As therefore at the close of the fifth day of July, 1886, he had by his own act made it impossible that he could ever suffer any loss, so far forth as the insured buildings are concerned, for which the contract in question provides an indemnity, and as the contract so expressly provided, it then came to an end; it had exhausted the reason for its existence.

On July 6, 1886, the plaintiff was the sole and absolute owner of the land. On that day, it made a verbal promise to Stannard to sell the land to him. But that promise was without any valuable legal or equitable consideration. It is not found that by reason thereof Stannard did any act resulting in loss or injury, or omitted to do any act which would have procured any advantage or benefit to himself. Presumably he had continued his occupation of the land and buildings, as mortgagor, up to the time of the promise by the plaintiff to him, and remained undisturbed. He had neither legal nor equitable reason for claiming a conveyance of the

land from the plaintiff.   The latter could have put an unim-peachable title in another.

So far forth then as the defendant's contract to indemnify Stannard for loss from destruction of the buildings is con-cerned, it ended on July 5th, 1886; therefore on no day subsequent thereto could the plaintiff take anything by rea-son of an assignment by him to it.

The defendant by its contract, in consideration of $10.28, insured Stannard "against loss or damage by fire, to the amount of $1,028; $350 on his frame barn and sheds * * * ; $250 on his hay, grain, straw and farm produce; and $428 on his wagons, carriages, sleighs * * * ; all while con-tained therein."   It is the claim of the plaintiff that, so far forth at least as the personal property is concerned, the pol-icy remains in full force and effect.   But although the effect of the contract is to indemnify Stannard for loss which he might suffer from the destruction of specified classes of pro-perty differing widely in kind, particularly described and capable of distinction each from the other; and although the indemnity is divided among the several classes in a stated proportion, yet, as a matter of law, the contract is one and indivisible, resting upon a single consideration, and framed to secure a single result; the apportionment of the indemnity being the exercise of their right by the parties, to meet the possible forms of loss which might befall them. The property insured was in one ownership, possession and place exposed to the same hazards.   The defendant agreed to insure a building and personal property, the latter to be retained within the former, all to be owned by the same person, naming him.   Presumably all these facts entered into the calculation, ending in fixing the consideration.   It is impossible to say, either as a matter of law or of fact, that the ownership by the same person of both species of pro-perty would not contribute to greater care in preserving both and thus materially lessen the risk; impossible to say as a matter of fact that the defendant did not so believe, and because of such belief compel Stannard to accept the pro-vision.

This possibly lower degree of risk secured at the inception, the defendant is entitled to hold until the expiration of the contract. While it is within our knowledge as men that insurers take risks upon buildings owned by one, and upon personal property therein owned by another, it is equally true that they decline to insure either buildings or personal property owned by some men, or to insure either for any man, if some men are holders of the other in connection therewith; and the defendant is not to be made, against its expressed will and agreement, to stand as insurer of the personal property owned by Stannard, within a building owned by another, at the same rate as if he was interested in the preservation of both.

If the contract should be divided, and the agreement as to one species of property should be eliminated, there would remain to the defendant a possibly increased risk as to the other because of the separation of ownership. The unity of the contract and the identity of the risk taken are inseparable, and although the rate of premium herein may be the same on both species of property, and it may be possible to specify the portion paid by each, it does not follow that the defendant would have originally contracted for either alone, or for both in separate ownership, at the same rate.

Within lawful limits parties must make contracts for themselves. These parties were careful to say in effect that if any part of the property insured ceased to be in the ownership of Stannard, there being no assent to the sale by the defendant, the contract should terminate.

To the suggestion that the provision is either unreasonable or immaterial, the conclusive answer must remain that it is not so found as a fact; therefore what is written must stand.

This provision is not to be interpreted as referring solely to the sale of the whole; nor, in case of the sale of a part, as referring solely to the part sold; for in these aspects it would be quite superfluous; as has been said, by force of law, in the absence of any express provision, the policy would cease to be operative as to the parts sold. It seems therefore that its reference must be to the case of a remainder where there has

been a sale of a part of that which is embraced in the same contract. And it is the duty of the court to give an effective meaning to a provision expressed in unmistakable language. What Stannard explicitly conceded to the defendant when obtaining, he must concede when enforcing the contract.

In instances in which mutual insurance companies have insured buildings and personal property therein contained, by one contract for a single consideration, courts have declared the fact that the company thereby acquired a lien upon both kinds of property for possible assessments to be a satisfactory reason for determining such contracts to be indivisible, notwithstanding the additional fact that the indemnity was made divisible and was apportioned to each class of property insured. But the presence or absence of a lien is not a decisive fact. There have been many like contracts by stock companies, upon buildings and personal property therein, by one instrument and upon one consideration, with like apportionment of indemnity to different classes of property, in which courts have declared the contract to be one and indivisible, although there was no lien, simply for the reason that the promise is single and the consideration one and entire—the well established test. *Lee* v. *Howard Ins. Co.,* 3 Gray, 583, 594; *Day* v. *Charter Oak Ins. Co.,* 51 Maine, 99; *Baldwin* v. *Hartford Fire Ins. Co.,* 60 N. Hamp., 422; *Gottsman* v. *Penn. Ins. Co.,* 56 Penn. St., 210; *Hinman* v. *Hartford Fire Ins. Co.,* 36 Wis., 159; *Schumitsch* v. *Am. Ins. Co.,* 48 id., 26; *Moore* v. *Virginia Ins. Co.,* 28 Gratt., 508; *Bowman* v. *Franklin Ins. Co.,* 40 Maryl., 620; *Cuthbertson* v. *Nor. Car. Home Ins. Co.,* 96 N. Car., 480; *Havens* v. *Home Ins. Co.,* 111 Ind., 90; *Garver* v. *Hawkeye Ins. Co.,* 69 Iowa, 202.

• Therefore, inasmuch as in legal contemplation Stannard sold on July 5th, 1886, buildings which, together with certain personal property therein contained, he had caused to be insured by the defendant by an indivisible contract, in which it was provided that if he should make such sale the

contract should terminate, his act of sale worked the termination thereof, as to all property specified therein.

The Superior Court is advised to render judgment for the defendant.

In this opinion PARK, C. J., and LOOMIS, J., concurred. BEARDSLEY, J., was of opinion that there should be a recovery for the personal property insured, but otherwise concurred.

CARPENTER, J., (dissenting). I cannot concur. The insured paid the premium on his policy, and the defendant received the full benefit of the contract. In the absence of fraud by the insured the equities are wholly with him; and so I think is the law, if at the time the policy issued, and afterward until the fire, he had an insurable interest in the property covered by the policy. It is immaterial that after the loss, Stannard, the holder of the policy, assigned his claim to the plaintiff. The plaintiff by that assignment, which was *bonâ fide* and for a valuable consideration, took the claim with all the equities and rights, and subject to all the defenses, which attached to it in the hands of the original holder.

The main question is—had Stannard an insurable interest in the property?

The policy covers both real and personal property. It was issued by a stock and not a mutual corporation. Therefore those whose property it insures do not become members of the corporation or interested in it, or in the pecuniary responsibility or condition of others who have property insured by it. Neither the form nor condition of its policies requires an applicant for insurance to state the particulars of his title or the incumbrances upon it, and the law does not require it unless called for by the terms of the policy, or of a written application, which in this case did not exist. The property insured was properly described by Stannard in his verbal application as his. So are the authorities. If the insured has only an equitable interest in the property under

a contract for its purchase, even though the time for payment by him has expired, he still has an insurable interest, as was recently held by the Supreme Court of Maine in *Gilman* v. *Dwelling-House Ins. Co.*, 17 Atlantic Reporter, 544, (81 Maine); and that decision I think is in accord with the general current of modern authorities. That a mortgagor may insure his mortgaged estate in such a corporation as the defendant, and in his application call the property his, without any statement of or reference to the incumbrance, unless called for by the terms of the policy or of the application, seems to be conceded. Therefore in this case the fact that the real estate was mortgaged when the policy was issued, and when the loss took place, is entirely immaterial, provided the right to redeem existed at the time of the loss.

It is true that foreclosure proceedings had been instituted, a judgment obtained, and the time fixed for redemption had expired, before the property was destroyed; but the mortgagee had by a valid contract extended the limitation, and the extended period had not expired. The right of redemption by virtue of the contract for extension continued an existing equity enforceable against the mortgagee; and therefore the right to redeem was in as full force as if the limitation fixed by the court was unexpired. I feel warranted in saying this, for although the vote of the directors of the plaintiff corporation was not passed until the day after the limitation fixed by the court had expired, yet I think it is quite apparent that the vote was passed pursuant to, and to carry into effect, a previous agreement between the parties. If, as is quite probable, such an agreement was made several days before, and Stannard in consequence thereof omitted to make arrangements for redemption, it will not be denied that there was a sufficient consideration. The agreed statement of facts does not say that there was no consideration, and I do not feel justified in saying so. There certainly may have been, and it may do great injustice to assume otherwise. Besides, it is assuming what I think we have no right to assume, that the plaintiffs would have repudiated their agreement with Stannard upon a mere technicality.

Evidently they wished him to redeem, and were desirous of extending to him every facility. Moreover, this is a matter purely between the plaintiffs and Stannard, and I am unable to see how it concerns this defendant. I do not fully appreciate the logic that will excuse the defendant from performing its contract for the reason given.

I think it more reasonable to interpret this transaction as continuing an existing equity, rather than as a distinct, independent contract of sale entered into after such equity had ceased to exist. That such was the intention of both parties is conclusively shown by the terms of the vote:—" *Voted*, that the time for the redemption by Ely Stannard of his property mortgaged to the bank and foreclosed, be extended three months from the 6th day of July, 1886." The effect of a redemption may be similar to the effects of a sale; nevertheless it remains true that a redemption is one thing, and a purchase is something legally different. I am suspicious of a cause that requires us to call a plain transaction by a different name. But even if it is in legal effect a contract of sale, yet it is in substance a continuation of a previously existing equity. That is the specific purpose which both parties had in view.

But, aside from the question about the real estate, Stannard was the absolute owner of the personal property, which composed nearly two thirds in value of all the estate covered by the policy. On that there was no mortgage or other lien of any kind, and his insurable interest in it was unquestioned. That the contract was so far severable as to preserve the insurance on the personalty ought to admit of no doubt. The policy holder had a clear insurable interest in all the property covered by it when it was issued. The personalty and realty were separately valued. There was no clause in the policy making it void if, when loss occurred, there was not an insurable interest remaining in the whole.

A forfeiture by failure of the continuance of an insurable interest without the fault and by the misfortune of the party insured, is simply a forfeiture under the provisions of the common law, and does not arise from the breach of any of

the terms of the contract of insurance, and therefore should be limited to the extent of the interest so forfeited. The cases in which the contract of insurance has been held to be entire, were not cases of this description, and this should not be confounded with them. And, in the other class, the Court of Appeals of New York has, on the most careful and well considered examination of the subject, deliberately held that the contract was severable; and in my judgment that is the better law. A forfeiture is never to be extended by construction or implication, and when the rights of innocent parties are prejudiced, should be restricted to the very letter of its terms.

Laying out of this case every consideration of equity and justice, all of which are clearly on the side of the insured, should the law be liable to the reproach of aiding an insurance corporation to retain the premium paid by the insured on such property as he had an unquestioned insurable interest in, and to withhold from him payment for such property when consumed, when by pecuniary embarrassment and necessity he has been compelled to mortgage another portion, and lose it by foreclosure before the fire occurred, and lose the insurance on that portion also? That is precisely this case, and I cannot give my assent to a doctrine which appears to me so full of injustice and wrong.

To their credit be it said that our insurance companies generally take pride in conducting their business on fair and honorable principles; but the establishment of the doctrine contended for by the defendant is calculated to encourage such as are so disposed to take an unconscientious advantage of those who, for the purpose of protecting themselves against loss by the destruction of their property by fire, obtain and pay for insurance on it, and find after it has been destroyed that the policy on which they relied was but an empty promise.

The case of *Stannard* v. *Meriden Fire Ins. Co.* was argued at the same time with the foregoing case, and involved the same facts with regard to the title to the building insured, with the following special facts:—After the vote of the savings bank was passed extending the time of redemption for three

months from July 6th, 1886, (the day following that upon which the title became absolute in the savings bank by the failure to redeem,) Stannard, the insured, upon the 31st day of July, upon a written application, in which he represented the property as his, asked for and obtained a policy of insurance upon a granary and its contents, the building being upon and a part of the foreclosed property. The court held that at the date of the policy Stannard had no interest in the building and that the policy was void as to it and as to the personal property in it.