(87 South. 170)

### ARNOLD et al. v. BLACK.  (6 Div. 92.)

(Supreme Court of Alabama. June 30, 1920. Rehearing Denied Nov. 6, 1920.)

1. Mortgages ⬅591(1) — Foreclosure cuts off equity of redemption and leaves only statutory right to redeem.

The foreclosure of a mortgage cuts off the equity of redemption and leaves the former owner of the equity of redemption only the statutory right of redemption from the foreclosure sale.

2. Mortgages ⬅594(3)—Grantee of equity of redemption entitled to·redeem.

Where a mortgagor conveyed the equity of redemption, the grantee, and not the mortgagor, had the right to redeem from a subsequent foreclosure sale.

3. Trusts ⬅95 — Mortgagee redeeming from earlier foreclosure held chargeable with trust in favor of mortgagor.

If a mortgage executed after foreclosure of an earlier mortgage did not operate as an assignment of the mortgagor's right of redemption from the foreclosure sale, the mortgagee, by claiming and exercising such right and obtaining a quitclaim deed from the party claiming under the sale, destroyed the mortgagor's right to redeem and committed a constructive fraud on the mortgagor, and equity will raise a constructive trust in the mortgagor's favor and vest her with the legal title upon her compliance with her offer to do equity.

4. Mortgages ⬅624(1)—Mortgagee rightfully redeeming from earlier foreclosure held to take title in trust for mortgagor.

If a mortgage executed after the foreclosure of an earlier mortgage operated as an assignment of the ·mortgagor's right of redemption from the foreclosure sale, the assignment was conditional and as security for the debt,

and when the mortgagee before maturity of the debt exercised the right of redemption, she took the title in trust for the mortgagor, and the mortgagor was. entitled to the property on paying the debt and reimbursing the mortgagee.

5. Trusts ⬅356(1)—Grantee of land subject to trust held to have no greater rights than those of grantor.

Where land in the hands of a mortgagee redeeming from an earlier mortgage was charged with a trust in favor of the mortgagor, the mortgagee's grantee succeeded to no greater rights than those held by the mortgagee.

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Bill by Dora D. Black against J. S. Arnold and another. From a decree overruling a motion to dissolve a temporary injunction, respondents appeal. Affirmed.

The bill in this case is filed by the appellee, Dora D. Black, against the appellants, J. S. Arnold and G. R. Harsh, as trustee, primarily seeking to redeem the lands described in the bill from a foreclosure sale under a mortgage executed by Eula C. Beck and her husband to one Annie M. Perdue, and as incidental relief to restrain the prosecution of two actions at law instituted by Arnold, and for his use in the name of said Beck, one an action of unlawful detainer, and the other to recover the rents alleged to be due under a certain contract of lease entered into between Perdue, the complainant, and her husband.

On the filing of the bill a temporary injunction was granted as prayed. The appellant, Arnold, thereupon submitted his motion to dissolve the injunction for want of equity in the bill, and interposed demurrers on like grounds, and on the hearing thereof the court entered a decree overruling the motion to dissolve and the demurrers, and from that decree this appeal is prosecuted.

It appears from the averments of the bill that one W. C. Beck, then being the owner of the lands described in the bill, on the 14th day of May, 1914, executed a mortgage embracing a portion of the land to the St. Clair Land & Lumber Company, his wife, Eula C. Beck, joining·therein, to secure the payment of an indebtednesss of $3,309, with interest thereon. Subsequent to the execution of this mortgage, on, to wit, June 4, 1915, Beck conveyed all the lands to his wife, she assuming the payment of the indebtedness to the lumber company. Thereafter, on June 22, 1915, Eula Beck and her husband executed a mortgage to Annie M. Perdue to secure an indebtedness of $5,704. This mortgage contained the usual power of sale for foreclosure and authorized the mortgagee to become the purchaser at such sale. After the law day of the Perdue mortgage, but before foreclo-

sure, Beck and her husband, "subject to an incumbrance not to exceed $10,120," conveyed by warranty deed all the lands to the complainant on a recited consideration "of an exchange of property and $1 in cash and other valuable consideration," and delivered possession thereof to complainant. There were outstanding incumbrances against the property, including the mortgages theretofore given by the Becks, and certain judgment liens, in excess of $10,120.

On May 21, 1917, six days after the conveyance by the Becks to complainant, Perdue foreclosed her mortgage under the power of sale, and became the purchaser of the property. She then took over by proper transfer the mortgage held by the lumber company and the indebtedness thereby secured.

The complainant and her husband, to avoid the forfeiture of her statutory right of redemption from the foreclosure sale of the Perdue mortgage by a failure of the complainant to surrender possession, entered into contract leasing the lands from Perdue for a term of one year, agreeing to pay $500 as rent for the premises; the lease reciting:

"And whereas Dora D. Black, one of the lessees, claims the right of redemption of said lands and expects to redeem said lands from the lessor herein on or before the 21st day of May, 1919 [the date on which the right of redemption will expire under foreclosure of the mortgage of Mrs. Eula C. Beck to lessor herein]: Now, therefore, it is agreed by the lessor, if the said Dora D. Black shall exercise said right of redemption, if she have said right, by paying the said lessor the amount necessary to redeem as fixed by law, and before the date of expiration of said right of redemption, then in this event the lessor agrees that no rent shall be charged beyond said redemption; that is to say, the amount of rent due under this lease shall be ascertained (in the event of redemption by taking that portion of the total year's rent as is represented by that fraction whose denominator is 365, the number of days in the year, and whose numerator is the number represented by the number of days between the 31st of December, 1918, and the date of redemption, and such sum thus ascertained shall be due and payable at the time of redemption). If no redemption is made, then the rent shall be due and payable as hereinbefore specified."

This lease contains the further recital:

"It is further understood that this lease is made and accepted subject to the right of various parties to redeem said lands from foreclosure."

Subsequent to the execution of the lease by complainant and her husband to Perdue, Perdue by deed dated March 21, 1919, for a consideration of $11,355.21 conveyed the lands to Harsh, as trustee, and by separate instrument transferred the land company mortgage and the indebtedness thereby secured to Harsh.

In the deed from Perdue to Harsh is embodied the following clause or stipulation:

"It is agreed and understood that the statutory right of redemption is outstanding against said property above described in various persons, particularly Eula C. Beck, her heirs and assigns and judgment creditors, and the said G. R. Harsh accepts this deed subject to said statutory right of redemption in said persons as may lawfully have such right."

A short time after the conveyance by Perdue to Harsh, on, to wit, May 17, 1919, and before the lapse of the period for statutory redemption from the foreclosure sale under the Perdue mortgage, Eula C. Beck, claiming the statutory right of redemption, and "by paying the amount bid by Annie M. Perdue, the purchaser at the foreclosure sale, * * * together with 10 per cent. interest thereon, and all other lawful charges, with 8 per cent. thereon, including the amount of a certain judgment in favor of Moore and Handly Hardware Company, a corporation, against Eula C. Beck and W. C. Beck in the sum of $432, and court costs, rendered by the circuit court of St. Clair county on the 27th day of March, 1916," which was agreed to be $12,599.94, obtained from Harsh a quitclaim deed to the property in question. This deed contained the following recital and agreement:

"It is further agreed and understood that the above-described real estate is now held in possession by Dora D. Black and her husband, H. H. Black, as lessees for the year 1919 at an annual rental of $500, and that said Harsh, as trustee, owns and holds said lease; and that said Harsh, if and when said rent is collected, shall have the right to retain as his own five-twelfths of the amount of said rent, the remainder thereof to be paid to the grantor herein."

After the foreclosure of the Perdue mortgage, complainant and her husband executed and delivered to Eula C. Beck a mortgage on the lands in question to secure an indebtedness of $2,000 due and payable on July 14, 1920, which is still unpaid.

Subsequent to the redemption by Beck from Harsh, Beck and husband for a recited consideration of $500 conveyed to Arnold all of the rights and equities acquired by Beck under the redemption deed executed by Harsh to Beck, and transferred and assigned the mortgage executed by complainant to her husband, and the debt of $2,000 thereby secured, are the lease contracts between complainant and her husband and Perdue.

Arnold thereupon commenced an action of unlawful detainer against the complainant to recover the possession of the land, and also instituted suit against her to recover the full amount of the rent of $500, under the lease contract.

The several conveyances and mortgages, with the single exception of the deed from Beck and husband to the complainant and

her husband, were seasonably and duly recorded.

ᴑ The complainant offers in her bill to do equity by paying all lawful claims held by Arnold and Harsh, and on this basis prays that the complainant be let in to redeem, and that her right and title to the property be established and quieted, with prayer for general relief.

James A. Embry, of Ashville, and J. E. Robinson, of Birmingham, for appellants.

Conveyance of land is expressly qualified as being subject to a mortgage. The covenants therein apply only to the equity of redemption, which is all that such a deed purports to convey. 148 Mass. 300, 19 N. E. 382; 22 N. E. 888; 34 Me. 299; 65 Me. 508; 8 A. & E. Enc. 7. The proper filing of the conveyance operates as notice of its contents. Section 3373, Code 1907. As to who may redeem, see section 5746, Code 1907. This section is always strictly construed. 189 Ala. 204, 66 South. 149. It is only where the sale cuts off or forecloses rights, which he would have and could exercise but for the sale, that the statutory right is given. 193 Ala. 182, 69 South. 1. A bill to redeem must aver a tender, or show a sufficient excuse for not making the tender, and pay the amount in court. Section 5751, Code 1907. A vendor of land with a lien by application of law does not come within the purview of the statute. 202 Ala. 442, 80 South. 826. The relation of mortgagor and mortgagee does not arise under the mortgage given after the foreclosure of a prior mortgage. 153 Ala. 468, 45 South. 241, 127 Am. St. Rep. 61. Warranty of title inures at once to the grantee in fee, in the absence of an intervening equity. 203 Ala. 312, 82 South. 668; 82 Ala. 548, 3 South. 5. Recital of the fact, which is not only a fact, but founded on a mistake of fact, will not operate by way of estoppel, to exclude the truth. 24 A. & E. Enc. 59. A stranger cannot set up estoppel contained in a recital of a deed. 24 American & E. Enc. 61; 15 Gray (Mass.) 97. A bona fide purchaser for value is protected against all latent equities of which he has no notice. 74 Ala. 221. Misrepresentation as to a matter of law does not constitute fraud. 38 Ala. 637.

Burgin & Jenkins, of Birmingham, for appellee.

No brief reached the reporter.

BROWN, J. [1] The effect of the foreclosure of the mortgage held by Perdue was to cut off the equity of redemption, which passed to the complainant through the deed executed to her by Eula C. Beck and her husband, leaving in complainant the statutory right of redemption from the sale under foreclosure. Am. Mtg. Co. v. Pollard, 120 Ala. 1, 24 South. 736; Hunter v. Mellen, 127 Ala. 343, 28 South. 468; Childress v. Monette, 54 Ala. 317; Lehman v. Shook, 69 Ala. 487; Otis v. McMillan, 70 Ala. 46; Harris v. Miller, 71 Ala. 26; Bailey v. Timberlake, 74 Ala. 221.

The appellant contends that this statutory right of redemption, not being property or the right of property, is not subject to mortgage, and therefore, by the executing of the mortgage by complainant and her husband to Eula C. Beck, subsequent to the foreclosure of the Perdue mortgage, the relation of mortgagor and mortgagee was not created between complainant and Beck, and, in exercising the right to redeem from Harsh, Beck was not exercising the right of a junior mortgagee.

This contention finds support in the authorities. In Francis v. Sheats, 153 Ala. 477, 45 South. 241, 127 Am. St. Rep. 61, it was said:

"Furthermore, if Francis' mortgage from Sheats was executed subsequent to the foreclosure of the Scott mortgage, no relation of mortgagor and mortgagee ever existed, under Sheats' mortgage to Francis, because Sheats was deprived by the foreclosure of any right or interest in the property which he could convey by mortgage to Francis."

See, also, Brannan v. Adams, 202 Ala. 442, 80 South. 826; Whitman v. Taber, 203 Ala. 496, 83 South. 595.

Therefore, for the purpose of this case, this contention of the appellant may be conceded. [2, 3] By the deed executed to the complainant by Mrs. Beck on May 15, 1917, she conveyed to complainant the equity of redemption in the land—the only interest she then held; and when the Perdue mortgage was foreclosed the statute conferred on the complainant, not her vendor, Mrs. Beck, the right to redeem, and, unless the mortgage executed by complainant and her husband to Mrs. Beck subsequent to the foreclosure of the Perdue mortgage can be treated as an assignment of the right of redemption under the statute, then Mrs. Beck had no right to redeem, and in claiming and exercising the right of redemption recognized as outstanding by the deed from Perdue to Harsh, and the lease from Black to Perdue, and taking the deed from Harsh, she destroyed the right of complainant to redeem from Harsh; for certainly Harsh could not upon complainant's offer to redeem subsequent to that time transmit the title to complainant, as he had already parted with this title. Mrs. Beck by the act of claiming and exercising the right of redemption that belonged to another, to wit, the complainant, and acquiring property in which she had no interest, and destroying the right of complainant to redeem from Harsh, at least committed a constructive fraud as against complainant, and for the purpose of meting out justice equity will seize upon this fact and raise a constructive

trust or trust in invitum in favor of the complainant, and upon complainant doing equity, as she has offered to do, will enforce the trust by vesting her with the legal title to the property. Pom. Eq. Jur. (4th Ed.) § 1044; 26 R. C. L. p. 1236, par. 83.

[4] Viewing the case from another angle: If the mortgage given by the complainant and her husband to Beck after the foreclosure of the Perdue mortgage operated as an assignment of Black's statutory right of redemption to Beck, the assignment was conditional, was given as a security for a debt, and when Beck, as the assignee thereof, exercised the right of redemption and took the title to the property, the debt from Black to Beck not having then matured, she took the title in trust for the benefit of her assignor, the complainant; and the complainant, by reimbursing her and paying the debt secured by the assignment, is entitled to the property. So, taking either horn of the dilemma, Mrs. Beck took the title to the property in trust for the complainant.

[5] "Wherever property, real or personal, which is already impressed with or subject to a trust of any kind, express or by operation of law, is conveyed or transferred by the trustee, not in the course of executing and carrying into effect the terms of an express trust, or devolves from a trustee to a third person, who is a mere volunteer, or who is a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor, or other voluntary transferor, or such person with notice, acquires and holds the property subject to the same trust which before existed and becomes himself a trustee for the original beneficiary." 3 Pom. Eq. Jur. (4th Ed.) § 1048.

The appellant, Arnold, is well within this rule, and under it he succeeded to no greater rights than were held by his vendor. On these principles the bill is not without equity, and the decree of the court below will be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes