147 So. 438

## ÆTNA INS. CO. v. KACHAROS.

### 6 Div. 313.

Supreme Court of Alabama.

March 9, 1933.

Rehearing Denied April 20, 1933.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

Coleman D. Shepherd, of Jasper, for appellee.

**GARDNER, Justice.**

This is a suit on a fire insurance policy. The insured was a purchaser of the property, the subject-matter of this suit, at a mortgage foreclosure sale under order of the court, evidenced by the register's deed executed January 17, 1930. The litigation reached this court (Dewyer v. Dover, 222 Ala. 543, 133 So. 581), but nothing there determined is of interest here. At the time of the issuance of the policy, July, 1931, and at the date of the loss, December, 1931, the period for the exercise of the statutory right of redemption had not expired.

It is insisted, therefore, there is no liability under the terms of the policy, for the reason insured was not the unconditional and sole owner, and the authorities noted by counsel as supporting this insistence have been duly examined (Essex Sav. Bank v. Meriden Fire Ins. Co., 57 Conn. 335, 17 A. 930, 18 A. 324, 4 L. R. A. 759; Hartford Fire Ins. Co. v. Keating, 86 Md. 130, 38 A. 29, 63 Am. St. Rep. 499; Exchange Underwriters' Agency v. Bates, 195 Ala. 161, 69 So. 956; Loventhal v. Home Ins. Co., 112 Ala. 115, 20 So. 419, 33 L. R. A. 258, 57 Am. St. Rep. 17; New Brunswick Fire Ins. Co. v. Nichols, 210 Ala. 63, 97 So. 82; Boulden v. Phoenix Ins. Co., 112 Ala. 424, 20 So. 587; Gunn v. Palatine Ins. Co., 217 Ala. 91, 114 So. 690; Brown v. Comm. Fire Ins. Co., 86 Ala. 189, 5 So. 500; Westchester Fire Ins. Co. v. Green, 223 Ala. 121, 134 So. 881; 26 Corpus Juris 172), but we are not persuaded they bear out this view.

On the contrary, the case of Gaylord v. Lamar Fire Ins. Co., 40 Mo. 13, 93 Am. Dec. 289, supporting the contrary view, is a case much in point, cited and quoted by this court in Loventhal v. Home Ins. Co., 112 Ala. 108, 20 So. 419, 423, 33 L. R. A. 258, 57 Am. St. Rep. 17. A consideration of underlying principles leads to a like conclusion.

Forfeiture clauses of this character in policies of insurance are to be strictly construed against the insurer, and always with reference to their legitimate effect, that is, the protection of the insurer against risks that are materially different from those which he has undertaken. As said in the Loventhal Case, supra, it is an interest, not a title, of which the conditions of insurance speak; the terms interest and title not being synonymous, and the court there approved the following discussion of the question: "The purpose of the provision is to prevent a party who had an undivided or contingent, but insurable, interest in property, from appropriating to his own use the proceeds of a policy, taken upon the valuation of the entire and unconditional title, as if he were the sole owner, and to remove him from the temptation to perpetrate fraud and crime; for without this a person might thus be enabled to exceed the measure of an actual indemnity. But where the entire loss, if the property is destroyed by fire, must fall upon the party insured, the reason and purpose of this provision does not seem to exist; and in the absence of any particular inquiry as to the specific nature of the title, or of any express stipulation in the policy that the assured held the legal or equitable title,—either being available to secure an entire, unconditional, and sole ownership,—the provision referred to can, we think, have no force to defeat the plaintiff's recovery in this case."

And, as pointed out in Capital City Ins. Co. v. Caldwell Bros., 95 Ala. 77, 10 So. 355, 356, ownership and not title is the material factor in assuming insurance risk on improved real estate, the court saying: "The extent of the ownership is the important element of inquiry. This, because the law, voicing common experience, presumes that the absolute owner of property will be more watchful of its preservation than would a mere tenant, or one owning only a partial in-

terest. And this watchfulness would be scaled, not by the form of the title, but by the extent of ownership."

■ This ruling has application to a purchaser at a foreclosure sale. True there remained in the mortgagor the statutory right of redemption, a mere privilege (Arnold v. Black, 204 Ala. 632, 87 So. 170; Lewis v. McBride, 176 Ala. 134, 57 So. 705), but so long as that privilege remains unexercised, the risk of loss falls upon the purchaser, and it is to his interest that the whole of the property be preserved and protected. The Missouri court, in the Gaylord Case, supra, answering a like argument, said: "No injustice is done to the defendants. It was not a matter of any importance to them that this title was subject to be divested by a possible redemption; for if there had been a redemption before the loss, there would have been no title, no insurable interest in the plaintiffs, and, of course, no possible right to recover."

We are persuaded, therefore, both upon reason and authority, the insured was the unconditional and sole owner of the property within the meaning of this clause of the policy.

At the time of the destruction of the house by fire, it had been unoccupied more than ten days, but less than thirty. The property had been insured the year previous, and while the insurance of July, 1931, was in a sense a renewal of the insurance, yet an entirely new policy was issued and it was not, as counsel seem to indicate, a renewal of the policy of the previous year, and the authorities noted (National L. & A. Ins. Co. v. Lokey, 166 Ala. 174, 52 So. 45; 2 Cooley's Briefs [2d Ed.] 1406; Commercial Fire Ins. Co. v. Morris, 105 Ala. 498, 18 So. 34; 1 Couch on Ins. 4919), would appear inapplicable.

■ But, however that may be, the next question to be considered was, under the evidence, clearly a question of fact to be determined upon a consideration of conflicting proof. The insurer, it seems, treated the property as farm property, and offered proof to show that policies issued on such improvements contained a limitation for vacancy of ten days, rather than thirty, as in the ordinary policies on town and city property. The policy issued and delivered to plaintiff in July, 1931, however, permitted as to loss by fire, a vacancy of thirty days. A month later, the insurer's special agent, having general supervision of the business of the company in that territory, discovering this fact, visited the plaintiff for the purpose, it seems, of getting a reduction of the amount of the risk from $700 to $600, and a correction in regard to the vacancy period limiting it to a period of ten days. This agent procured plaintiff's signature to an application for the insurance, which he states is the usual custom in insurance of that character of property. This application purports to have been signed on July 14, 1931, the date of the policy sued upon, but in fact it was not signed until a month later. In this application is an inquiry as to whether title was by warranty deed, and the answer in the affirmative. Defendant now insists this answer constitutes a material misrepresentation which should avoid the policy.

The failure to require an application upon the issuance of the policy was the fault of the insurer. The policy had been issued and delivered and the signature to the application was secured without consideration, and without any previous understanding to that effect. Such representation therefore could not have the effect of avoiding the policy. 26 Corpus Juris 161. Moreover, the subject-matter of the inquiry does not appear to have been of any material concern to the insurer, for, as previously noted, it is the extent of the ownership and not the form of the title that constitutes the material factor in assuming insurance risk on improved real estate. Capital City Ins. Co. v. Caldwell Bros., supra.

■ At the time of the written application the agent produced for signature a separate paper headed "Transfer of Liability," and after blank spaces for that purpose the further heading "Reduction of Liability." He procured an agreement that the amount of insurance be reduced from $700 to $600, and inserted the figures showing such reduction in this paper under the heading "Reduction of Liability." There was inserted in the same instrument, with pen and ink, just above the words "Reduction of Liability," the following: "Vacancy permit reduced to ten days."

Plaintiff's testimony, as well as that of her husband who testified to reading the paper, was emphatic in the statement that at the time this instrument was signed it contained no such language, and that nothing whatever was said concerning any vacancy permit, but only the reduction of the amount of insurance. The testimony of the agent is to the effect he wrote in these words at the same time, and with the same pen and ink, he filled out the amount of reduction.

The testimony was in sharp conflict, and the trial judge had before him the paper itself for examination. He made a special finding of the facts, as requested by defendant, which appears in the report of the case, and wherein he concludes from the proof that the words were not in the paper when signed, and "never entered therein with her knowledge or consent, and that the thirty day vacancy permit clause contained in the original policy remained unchanged." The paper was not delivered to plaintiff or attached to the policy, but offered in evidence by defendant as constituting an agreed change of the original. But it cannot have binding force

if in fact these words were not in the instrument when signed, and added thereafter without the knowledge or consent of the insured. The trial court so found, and his ruling will not be here disturbed. The testimony to the effect that the agent said nothing in regard to the vacancy permit change at the time was competent to be considered on the issue of fact. Nor was there material variance, as to the complaint and the policy offered in evidence. Plaintiff's proof was to the effect that only one change was agreed upon; that was a reduction of the amount of recoverable insurance to $600, and for that amount she instituted her suit; and that the language as to the vacancy permit change never became any part of the agreement and never affected the policy. The policy was admitted in evidence without error.

Like observations suffice to show also that there is here presented no question of one rescinding a part of the contract unfavorable and standing on the part favorable, and the cases of Prestwood v. Carlton, 162 Ala. 327, 50 So. 254, and Cooper v. Rowe, 208 Ala. 494, 94 So. 725, cited by appellant, are not here applicable.

The trial court expressly excluded any evidence that might be construed as tending to show any effort at compromise, and the argument in relation to such proof is therefore without merit.

■ Appellant argues there is an irreconcilable conflict in the vacancy clauses of the policy sued upon, and that the policy issued was a renewal of the one for the year before and will be treated as containing the same provisions, citing, among other authorities, Commercial Fire Ins. Co. v. Morris, 105 Ala. 498, 18 So. 34; National Life & Accident Ins. Co. v. Lokey, 166 Ala. 174, 52 So. 45. But we consider these authorities without application here.

The policy sued upon is a new and different policy from the former one, and the vacancy clauses are readily reconciled. The first ten-day limitation is under the heading, "unless otherwise provided by agreement in writing added hereto." The policy protects against loss by fire, lightning, windstorm, cyclones, and tornadoes. Further on in the policy is what is termed a "vacancy clause * * * applicable to fire cover only," granting a thirty-day vacancy which refers to the former clause by expressly providing that the ten days be included therein. There is no conflict. Nor is there any mistake apparent on the face of the contract. The insurer desired the change and insists they issued the policy by mistake, as "farm property" is given only ten days' vacancy permit. At the expiration of the first policy the agency at Jasper mailed plaintiff the policy sued upon. It was acceptable to her, and became a valid policy in her hands. She had entered into no contract by mistake, and the error, if any, was all on one side. The insurer, instead of canceling the policy, preferred to have it stand with reduction of amount, and attempted to change by agreement as to the vacancy clauses.

The plaintiff's proof shows they made no such agreement, and that the statement in the signed instrument to that effect was in effect a forgery. Under these circumstances, therefore, the argument advanced upon this theory of the case is without merit.

■ There are a few remaining rulings on evidence that need no separate treatment. So far as the questions of law are concerned, plaintiff is shown to be entitled to recover, and the only remaining question was one of fact. The other rulings in no manner affected this question of fact, and could have no material bearing on the questions of law discussed. If any error intervened, therefore it was clearly without prejudice, and within the influence of Supreme Court Rule 45.

We are not unmindful of the general statement of our cases that when a case is tried by the judge without a jury, and illegal evidence is introduced, it will require a reversal of the judgment, unless the remaining evidence is without conflict and sufficient to support the judgment. Springer v. Sullivan, 218 Ala. 645, 119 So. 851; Deal v. Houston County, 201 Ala. 431, 78 So. 809. The statement originated in First National Bank v. Chaffin, 118 Ala. 246, 24 So. 80, 84, and in the cases where used will be found amply sufficient for the purpose in hand. But it was not intended that a mere erroneous ruling on evidence, which clearly appears entirely harmless and with no possible effect upon the result, must necessarily work a reversal, unless the remaining proof is uncontradicted. Such a construction of the language is refuted by the opinion in the Chaffin case, supra, where the expression originated, as disclosed by the following: "When error is found, the presumption of prejudice or injury arises, and, unless it is clearly repelled, a reversal must follow." And the entire discussion is to the effect that error appearing prejudice or injury is presumed, and the cause will be reversed "unless the record itself rebuts the presumption." We are of the opinion that if any error intervened, which we do not determine, any presumption of injury is clearly rebutted by the record, and no cause for reversal is shown.

No reversible error appearing, the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.