128 So.2d 491

**T. M. BURGIN**

v.

**Tes A. PHILLIPS et al.**

6 Div. 533.

Supreme Court of Alabama.

March 30, 1961.

James & Beavers, Birmingham, for appellant.

Leader, Tenenbaum, Perrine & Swedlaw, Birmingham, for appellees.

**STAKELY, Justice.**

This is an appeal from a final decree of the Equity Division of the Circuit Court of the Tenth Judicial Circuit of Alabama. T. M. Burgin is the appellant and Tes A. Phillips and others are the appellees.

The case originated as an in personam bill to quiet title, with an averment in the alternative that if the respondent has some interest in the land, the real estate could not be equitably divided among the tenants in common and that it is necessary that the land be sold for division. The complainants, Tes A. Phillips and others, are alleged to be tenants in common and the proceeding was instituted against T. M. Burgin requiring him to come forth and specify why and how he claims an interest in the real estate described in the bill of complaint.

No demurrer was filed to the bill of complaint, but the respondent, T. M. Burgin, filed answer to the bill of complaint, alleging that he owned an interest in the real estate by reason of a written contract to purchase, a copy of the contract being attached to and made a part of the answer. T. M. Burgin with the answer filed a cross bill setting forth the contract to purchase and prayed for an ascertainment of the amount due under the contract and called for specific performance of the contract. In the alternative the cross bill filed by T. M. Burgin prayed that if the court should ascertain that the vendors who executed the contract of sale to T. M. Burgin, were not the owners of all the interest in the land, that he be conveyed the interest of those so signing the contract with a proportionate abatement of the purchase price. Demurrers were filed to the cross bill but were not ruled upon.

In answer to the cross bill the respondents (the original complainants) allege that there was no legal contract of sale and that the contract was not signed by all the owners of the land, those signing the contract being only Tes A. Phillips and Lynn P. Rashbaum, who each own only an undivided interest in the property, and that the contract was delivered conditionally to T. E. Bonner, the real estate agent negotiating the sale, with instructions to obtain the signatures of the remaining complainants.

It is further alleged that T. E. Bonnor, having previously made a sale of property belonging to complainants, knew that a sale by the legal guardian of Kathleen Phillips, a minor who owns an undivided 1/4th interest in the property, would be subject to the approval of a court of proper jurisdiction, and that Patricia G. Garson, the legal guardian of Kathleen Phillips, a minor, had no authority to make such sale without the approval of the court, and that she as such guardian had never executed the contract.

It is further alleged that the trustees under the will of Sam Phillips, deceased, owned an undivided 1/8th interest in the property and that the trustees have never authorized approval of the sale or signed the contract.

It is further alleged in the cross bill that after the contract was signed by Tes A. Phillips and Lynn P. Rashbaum, it was mailed by Mrs. Tes A. Phillips to T. E. Bonner and that before said contract was received by T. E. Bonner, Mrs. Tes A. Phillips by long distance telephone called T. E. Bonner and requested him not to deliver the contract to T. M. Burgin but to return the contract to her.

It is further alleged that prior to the receipt by T. E. Bonner of the contract through the mail, complainants' attorney, Ben Leader, called T. E. Bonner and instructed him not to deliver the contract to the respondent but to deliver the contract to him and that the owners had decided not to sell the property and under no circumstances should the contract be delivered to T. M. Burgin.

It is further alleged that T. E. Bonner, notwithstanding his familiarity with the title and notwithstanding the fact that he had acted as rental agent for the owners for a long period of time and notwithstanding the fact that he knew that the contract had not been signed by all the parties in interest and that the sale would have to be confirmed by the court and notwithstanding the instructions from both Tes A. Phillips and her attorney, Ben Leader, not to deliver the contract, without authority and in direct violation of instructions, did deliver a copy of the contract to the respondent and cross complainant, T. M. Burgin.

It is further alleged that T. M. Burgin or T. E. Bonner recorded the contract in the Probate Office of Jefferson County, Alabama, without the consent or authority of the complainants and that demand had been made upon T. M. Burgin to satisfy or remove the contract of record, which request had been ignored and refused, and further that the contract constitutes a cloud upon the title of the complainants' property.

The case was heard orally before the court with a stipulation that the complainants were the owners of the entire interest in the real estate, their respective interests being as follows:

Tes A. Phillips _____3/8th interest,
Lynn P. Rashbaum _____2/8th interest,
Kathleen Phillips _____2/8th interest, subject to a dower interest of Mrs. Patricia G. Garson in the property of Kathleen Phillips.
Tes A. Phillips, Arthur Phillips and Harold Aronsohn, as Trustees, _____1/8th interest.

After hearing the evidence the court entered a final decree holding: (1) that the complainants Tes A. Phillips, individually, Lynn P. Rashbaum, individually, Kathleen Phillips, a minor, and Tes A. Phillips, Arthur Phillips and Harold Aronsohn in their capacity as trustees under the will of Sam. Phillips, deceased, are the owners of the real estate described in the original bill in this cause, this real estate being situated in the City of Birmingham, Jefferson County, Alabama, and more particularly described in the bill of complaint and in the decree. (2) That T. M. Burgin, the respondent and cross complainant in the cause, has no right, title or interest or incumbrance upon the lands involved in the suit or any part thereof. (3) That the relief prayed for by the respondent, T. M. Burgin, in his cross bill is hereby denied and the cross bill dismissed. (4) That the alleged contract attached as Exhibit A to the cross bill is void and of no effect and is hereby removed as a cloud on the title to the lands of the complainants and cross respondents. (5) That the register within 30 days from this date file a certified transcript of this decree for record in the Probate Court of Jefferson County, Alabama, the county in which the lands lie and that the Probate Judge record and index the decree as required by § 1113, Title 7, Code of 1940. (6) That the respondent pay the costs of this suit, to be taxed by the register for which let execution issue.

I. It is obvious that the most important issue to be determined in the case at bar is whether or not there existed a valid con-

tract of sale between the parties which is specifically enforceable. Of course in reaching a determination of this kind there must be a contract of sale in which there is a mutual assent or in other words, there must be a valid offer and an acceptance of that offer which results in a contract. It is the position of the appellant that the testimony shows that a sufficient offer to purchase the property was made by him, T. M. Burgin, in that he signed the contract of sale as purchaser and deposited a check in the amount of $1,000 as earnest money with the agent, T. E. Bonner, and further that T. E. Bonner submitted the offer of T. M. Burgin to the complainants in that he mailed this offer to Mrs. Tes A. Phillips, who lived in New York, in accordance with her letter of August 28, 1958.

It is further earnestly contended by the appellant that having made the offer, the proof shows an acceptance of the offer by the fact that Mrs. Tes A. Phillips accepted the offer by depositing a letter to that effect in the U. S. Mail, she being authorized to speak in behalf of the other owners of the property. The appellant relies on the case of McCleskey & Whitman v. Howell Cotton Company, 147 Ala. 573, 42 So. 67, 69, from which we quote as follows:

"It is next insisted that the complainant should show that the offer was pending at the time of its acceptance by plaintiff. An offer is 'deemed to continue in force until it has been answered, although it may be withdrawn at any time before it has been accepted unconditionally, but not afterwards.' 7 Am. and Eng.Ency.Law (2d Ed.) 128 and cases cited in notes. See, also, Mactier's Adm'rs v. Frith, 6 Wend. (N.Y.) 103, 21 Am.Dec. 262. If defendants relied upon a withdrawal of their offer before acceptance by plaintiff, this is a matter of defense. On the averments of counts 3 and 4 Marsh was defendants' agent to communicate their offer and to receive plaintiff's acceptance of it, without defendants actually receiving notice of it. 9 Cyc. p. 273. It is true, defendants could have withdrawn their offer at any time before acceptance was communicated to their agent Marsh, but the telegram of plaintiff's to Marsh when delivered to the telegraph company was a sufficient manifestation of acceptance, which was done before plaintiff was notified of the withdrawal of defendants' offer. 9 Cyc. pp. 293, 294, 295, 296; Trevor v. Wood, 36 N.Y. 307, 93 Am.Dec. 511, and cases there cited."

To summarize the situation, it is the position of the appellant that from the moment of mailing of the contract by Mrs. Tes A. Phillips to T. E. Bonner, which was signed by Mrs. Tes A. Phillips and Lynn P. Rashbaum, a contract resulted which is specifically enforceable in equity.

Upon a careful consideration of the evidence, we do not agree with the contentions of the appellant. T. E. Bonner, the real estate agent, by reason of having handled the rentals of the property for many years and having sold a parcel of property belonging to the same owners during the same year, was fully familiar with the ownership of the property, the fact that it was necessary to obtain other signatures to the contract, to get the approval of Mr. Ben Leader, the attorney of the owners, and to obtain court approval insofar as the interest of the minor, Kathleen Phillips, was concerned. T. E. Bonner in his letter of August 28, 1958, to Mrs. Tes A. Phillips stated, "We have talked to Mr. Leader and suggested that he write to you and the other interests." In his letter to Mrs. Phillips dated September 3, 1958, he stated, "I suggest that you and the other interested parties sign and return three copies of the contract."

However T. E. Bonner failed to obtain the signatures of all the owners. He also failed to get the approval of Mr. Leader and also failed to get court approval of the sale of the minor's interest. The record shows that T. M. Burgin testified that Mr. Bonner had told him that the sale would

probably have to go through court and that a minor was involved.

In McConnon & Co. v. Kirby et al., 211 Ala. 440, 100 So. 764, 765, this court said:

"An instrument, other than negotiable paper, signed by certain obligors, and placed in the hands of a co-obligor or other person, to be delivered to the obligee only upon obtaining the signature of another named person as co-obligor, does not become a completed contract until the signature of such other person is obtained. The paper is treated as an escrow in the hands of an agent, with power to deliver when completed. * * *"

The court in this case further said:

"The several grounds of demurrer raising the point that the plea must show the obligee had notice of the conditional delivery, or consented thereto in person or by agent, are manifestly not well taken. The question is not whether the obligee is bound by the condition, but whether the obligors are bound by the bond. The entire doctrine rests upon the proposition that no contract ever came into existence."

In Portis v. Thrash, 216 Ark. 946, 229 S.W.2d 127, the court held that if a signed instrument was not actually delivered as a binding contract but was delivered with the understanding that it should be held without becoming effective until the happening of an event, the signed instrument would not be a binding contract, unless the stipulated event occurred.

In Stockyards National Bank of South Omaha v. Bragg, 67 Utah 60, 245 P. 966, 975, the court said:

"That a delivery be so conditioned it is not necessary that express words to that effect be used at the time. Such conclusion may be drawn from all the circumstances which properly form a part of the entire transaction, whether in point of time they precede or accompany delivery."

See also 154 A.L.R. 778.

In the case of Helperin v. Guzzardi, 108 Cal.App.2d 125, 238 P.2d 141, 143, there was a situation with reference to a real estate transaction quite similar to the case at bar. The court said:

"When an agreement is signed and handed over with the understanding that it will not be used or become operative until it is signed by another who is expected to join therein, it does not become a contract until the additional signature is obtained. Kurtz v. Forquer, 94 Cal. 91, 94, 29 P. 413; Winter v. Kitto, 100 Cal.App. 302, 306, 279 P. 1024; Anothony Macaroni Co. v. Nunziato, 5 Cal.App.2d 588, 43 P.2d 315; 17 C.J.S. Contracts, § 62, p. 412. The agreement may or may not name the expected signer as a party in order to come within the rule. Here no one was named in the body of the deposit receipt as the 'seller' although that word appeared under Guzzardi's signature. Nevertheless the acceptance would have been incomplete without the signature of Mr. Guzzardi and it was so understood by the broker."

In Obermark v. Clark, 216 Ala. 564, 114 So. 135, 136, 55 A.L.R. 1153, this court held that the signer of a contract is not liable in damages as for a breach of contract where it was understood that the vendee would obtain joinder of the other owner but such other owner failed to join. We quote from this case as follows:

"When the contract is considered in the light of the principle just stated, and the pleaded facts, it is clear that the plaintiff, Clark, did not contemplate nor intend to purchase merely the individual half interest of Obermark, but it was his purpose to purchase the entire title. It is equally as clear that Obermark, when he affixed his signature to the alleged contract, did not intend to acquire the interest of Mrs. Gates, but merely intended to sell his interest in the property and contem-

plated that Mrs. Gates would become a party to the agreement as to her interest. Under these circumstances it was impossible for Obermark to convey the entire title, and it would be unjust to hold him responsible for a failure to convey the entire title. The contract contemplated and intended to be made was a tripartite contract or agreement to sell, and it was as essential to the finality and completeness of assent that all the parties intended should be bound as it was that all the terms should be definitely agreed upon. 6 R.C.L. pp. 616, 617, § 37, and authorities cited in note 110 Am.St.Rep. 747."

▮ T. E. Bonner in conducting the negotiations under the facts in this case was the agent of the vendors. A real estate broker · cannot act as agent for both the buyer and the seller in the same transaction. To state the principle a little differently, a servant cannot serve two masters. Although T. E. Bonner may have thought he was representing both parties, he was in law and in fact the agent of the vendors. Minto v. Moore, 1 Ala.App. 556, 55 So. 542.

It necessarily follows that if T. E. Bonner was the exclusive agent of the vendors, delivery of the contract to him, whether conditional or otherwise, was not a delivery to the purchaser and could be recalled. In other words, the vendors still remained in dominion and control of the contract when Mrs. Tes A. Phillips mailed the contract to T. E. Bonner.

It seems to us that under the testimony in this case T. E. Bonner did not act in good faith to the appellees and breached the duty which he owed to his principals. This court in Myers v. Ellison, 249 Ala. 367, 31 So.2d 353, 355, said:

"An agent sustains a position of trust toward his principal and in all transactions affecting the subject of his agency, the law dictates that he must act in the utmost good faith and must make known to his principal each and

all material facts within his knowledge which in any way affect the transaction and subject matter of his agency.— Lauderdale v. Peace Baptist Church, 246 Ala. 178(9, 10), 19 So.2d 538; Dudley v. Colonial Lumber Co., 223 Ala. 533, 137 So. 429; 3 C.J.S. Agency, § 138a, page 6."

▮ The offer in the instant case was evidenced by the contract signed by T. M. Burgin. T. M. Burgin did not send the contract through the mail. He did not know who owned the property. He signed the contract and delivered the contract manually to T. E. Bonner, an agent of the sellers. T. E. Bonner, in his capacity as such agent, mailed the contract to Mrs. Tes A. Phillips. The partially executed contract was placed in the mail by Mrs. Tes A. Phillips, not addressed to T. M. Burgin who made the offer, but to T. E. Bonner, her agent. In the case of Scottish American Mortgage Co. v. Davis, 96 Tex. 504, 74 S.W. 17, 97 Am.St.Rep. 932, it is held that where the offer is not made by mail, but accepted by a letter deposited in the mail, but intercepted before delivery, there was no binding agreement on the purchaser and he was at liberty to withdraw.

The evidence shows that T. M. Burgin did not make any offer by mail. He did not write Mrs. Tes A. Phillips. Mrs. Tes A. Phillips returned the contract to T. E. Bonner. Accordingly, no acceptance of the contract was ever made to T. M. Burgin. See Guardian National Bank v. Huntington County State Bank, 206 Ind. 185, 187 N.E. 388, 92 A.L.R. 1056.

In Helperin v. Guzzardi, 108 Cal.App. 2d 125, 238 P.2d 141, 143, the court, speaking on the question of delivery, said:

"Furthermore there was no delivery such as to result in the formation of a contract. The writing provided that the seller was to pay Prindle a broker's commission * * * By the oral agreement Prindle became the special agent of Guzzardi with respect to possession of the writing and received it in

that capacity. It was returnable upon demand when it became certain Mrs. Guzzardi would not sign it. *The possession of Prindle was subject to the right of Guzzardi to recall the* writing. An instrument placed in the hands of a third party is not delivered as long as the signer retains control of it. Williams v. Kidd, 170 Cal. 631, 637, 151 P. 1; Hudemann v. Dodson, 215 Cal. 3, 6, 7 P.2d 997. Whether it is a deed or other instrument, the intention of the depositor to part with or retain control is the deciding factor."

 II. It is insisted that the admission in evidence of the appraisal of the property made by J. Hudson Barker, deceased, constitutes reversible error because the appraisal is hearsay. Without conceding this to be error, it should be pointed out that the question of valuation was not a material issue in the case, but merely a collateral matter. The appraisal was admitted to lend credibility to the testimony of both Mr. Leader and Mr. Tenenbaum to the effect that an appraisal had previously been made of all the property, on account of the minor's interest in the property and that this was necessary in order to obtain court approval of any sale. According to the testimony both Mr. Leader and Mr. Tenenbaum pointed out to T. E. Bonner when he solicited a listing of the property that they could not and would not recommend a sale below the value as appraised by Mr. Barker. The value of the property as shown by the appraisal was $39,000 but the offer was for $30,000. If error, the error consisted in the admission in evidence of illegal evidence not affecting the sole fact question of acceptance of the contract by the appellees. Aetna Ins. Co. v. Kacharos, 226 Ala. 504, 147 So. 438, 91 A.L.R. 1432. Besides in Howell v. Dodd, 229 Ala. 393, 157 So. 211, 214, this court said:

"The questions to which these assignments relate do not show that injury resulted from the ruling. * * * Injury will not be presumed but must be affirmatively disclosed."

Supreme Court Rule 45.

Upon a careful consideration of the evidence, which we have not undertaken to set out in detail, and the principles of law involved, we think that the decree of the lower court should be upheld.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.