GUARDIAN NATIONAL BANK *v.* HUNTINGTON COUNTY STATE BANK ET AL.

[No. 26,394. Filed November 3, 1933. Rehearing denied February 13, 1934.]

186

*Altheimer & Mayer, Claude Cline, Mart O'Malley, Robert N. Van Atta, Willis C. McMahan, A. B. Manion,* and *McMahan & Smith,* for appellant.

*Eben Lesh,* for appellees.

FANSLER, J.—Action by appellant to recover upon four checks aggregating $55,000.00, drawn by the Steinbrenner Rubber Company upon appellee, Huntington County State Bank. Trial by jury and judgment for appellees, from which this appeal is taken. Appellant assigns as error the overruling of its motion for a new trial. The questions presented involve the suf-

ficiency of the evidence, the giving of and refusal to give certain instructions, and the admissibility of one item of evidence. There is no conflict in the evidence except as to one matter, to which we will hereafter refer.

Appellant and the appellee bank were engaged in the banking business in Chicago, Illinois, and Huntington, Indiana, respectively. The Steinbrenner Rubber Company was an Indiana corporation, with its principal office at Noblesville, and had accounts with both appellant and the appellee bank. On December 24, 1925, the Steinbrenner Company drew its four checks aggregating $55,000.00 on the appellee bank, and deposited them to its account with appellant. The checks, together with others, were deposited by appellant in the National Bank of the Republic of Chicago for collection, and passed in succession through the National Bank of the Republic and the Federal Reserve Bank of Chicago, to the First National Bank of Fort Wayne, Indiana, where they were received on December 29th.

The First National Bank of Fort Wayne and the appellee bank were correspondents, and had adopted the custom of handling checks and commercial paper between themselves by a system of charges and credits, each carrying an account with the other. It was their custom when checks came into the hands of either, drawn upon the other, to charge the amount of the checks to the account of the payee bank and immediately mail the same to the payee for credit in what was known as a "cash letter." The letter itself was just a list of figures, without description of the items involved, the amounts and total of which should correspond with the amounts and total of the items enclosed. It was the custom to acknowledge the remittance by letter, mailed on the day the cash letter was received, and in the event the payee declined to honor or pay any check contained in the letter, to return the check with the

acknowledgment, and upon return of the check the charge previously made would be cancelled.

The First National Bank of Fort Wayne, upon receiving the checks here involved, charged the appellee bank therewith and included the checks and charge, with other items, in a cash letter to the appellee bank. This cash letter was received by the appellee bank on the morning of December 30th.

The appellee bank in its accounting system maintained what was called a run sheet or check journal and a general cash sheet. The amounts of checks received were listed on the check journal, without a description of the check, however; merely a list of figures; and the general cash sheet was maintained for the purpose of showing the bank's cash condition, without description of the items involved or the amounts being entered. The appellee bank maintained ledgers in which customers' accounts were kept, which were known as individual ledgers. It was the appellee bank's practice in dealing with checks received in the morning mail, or over the counter, before eleven o'clock, to post the checks to the depositor's account in the ledger, after which the amounts of the checks were put upon the check journal. From this practice was excepted checks which had been indicated to be held out for scrutiny or examination. Checks received after eleven o'clock A. M., and those which had been held out of the "first run" and afterwards approved, were dealt with in the "second run." The amounts of these were placed upon the check journal, but were not entered on the ledger as a charge and credit to a customer's account until the following day.

When the cash letter containing the checks in question was opened at appellee's bank, the cashier directed the bookkeeper to hold the checks in question out of the first run. Thereafter they were approved by the

cashier and were entered on the check journal, but were not entered upon the ledger as a charge against the account of the Steinbrenner Rubber Company, nor as a credit to the First National Bank of Fort Wayne. It was the practice to stamp checks "paid" when the entry was made in the customers' ledger, and the checks in question were not stamped "paid." At the close of business the general cash sheet was made up and the amount of the checks was included on that sheet as a charge against the bank. After the general cash sheet was balanced it was the practice to send out letters of advice and credit to corresponding banks. Such a letter was prepared, signed, sealed, and mailed to the First National Bank of Fort Wayne, advising it that the checks in question had been paid. After the appellee bank had closed and the letter had been deposited in the mail, the cashier of the appellee bank was informed over the telephone, between six and seven o'clock P. M., that certain checks of the Steinbrenner Rubber Company, previously drawn on appellant and deposited with the appellee bank to the Steinbrenner account, and which had gone forward for collection, had been protested by the Federal Reserve Bank of Chicago. The cashier of the appellee bank then went to the postoffice and took out the letter to the Fort Wayne bank. He caused the checks in question to be protested, changed the letter to the Fort Wayne bank by deducting from the credit the sums of the checks, and redeposited the letter in the mail that evening, and it was delivered to the Fort Wayne bank the next day.

The only conflict in the evidence concerns a telephone conversation between a representative of the appellant and the cashier of the appellee bank on the morning of December 30th. Appellant's representative testified that the cashier of the appellee bank said the checks had been paid. The cashier of the appellee bank testified

that he said the checks would be paid. We must assume that the jury believed that version most favorable to the appellee bank.

The case was tried upon the theory that the question of whether or not the checks had been paid by crediting the Fort Wayne bank with the amount thereof, was a question of fact to be determined by the jury from all of the circumstances in evidence, and that the custom and practice of the appellee bank in honoring and paying checks received by mail was pertinent to a determination of that question.

It is contended by appellees that the rules of law governing offer and acceptance as consummating a contract are controlling. Appellant contends that no acceptance was involved, since the transaction constituted a presentment for payment, and the question is merely whether payment was made. If payment was made, it was by crediting the amount to the Fort Wayne bank and thus creating an executory contract to pay the amount to that bank upon demand, which was analogous to an acceptance. By offer and acceptance a contract is created, while by payment a contract is discharged.

If a check is presented to a drawee bank at a teller's window and is paid, or is entered as a credit in the pass-book of the depositor, or a deposit slip or other memorandum is issued and delivered to the depositor showing that the check is credited to his account, the bank is bound.

But we have no such situation here. These checks were sent by mail, and the drawee bank was not bound until it had done something, which was the equivalent of paying the checks or accepting them as a credit to the account of the remittor. The checks were not marked "paid" nor were they entered on the appellee bank's ledgers, either as a

charge against the account of the drawer or as a credit to the account of the Fort Wayne bank. The check journal and cash sheet were part of the system of bookeeping maintained for the bank's convenience and to expedite its business and were obviously not intended for delivery to its depositors nor as a record of its accounts with its depositors. *Cohen* v. *First National Bank of Nogales* (1921), 22 Ariz. 394, 198 Pac. 122, 15 A. L. R. 701.

Whether the question involved is payment or acceptance, the entries referred to can have no significance.

An intention to pay is not payment, for even though one may have procured the money with which to pay and made an entry in his books showing payment and delivered the money to his servant or agent with instructions to pay, and started the agent or servant on his way to make payment, yet he may reconsider, recall his servant, change his entries, and there is no payment. And the same is true concerning the acceptance of an offer; one may decide to accept and prepare a letter of acceptance and give it to his servant with directions to deliver, and the servant may be on his way, but he may be recalled and the terms of the acceptance altered or withdrawn altogether, which is as if all of these transactions had merely taken place in the mind. *New* v. *Germania Fire Insurance Co.* (1908), 171 Ind. 33, 85 N. E. 703.

The language of Justice Mitchell, in the case of *Purviance* v. *Jones* (1889), 120 Ind. 162, 21 N. E. 1099, applies equally to payment or acceptance, and is as follows:

"While it is not indispensable that there should have been an actual, manual transfer of the instrument from the maker to the payee, yet to constitute a delivery it must appear that the maker, in some way, evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it, and intentionally plac-

ing it under the power of the payee, or of some third person for his use."

We are not unmindful of the fact that under some circumstances silence may be treated as an acceptance, but no such situation arises here. If there is any evidence which is entitled to consideration, inconsistent with the verdict and indicating payment or acceptance, it is the deposit in the United States mails of the cash letter giving credit to the Fort Wayne bank.

It has undoubtedly been the rule in this country and in England that the depositing of a communication in the mails amounts to a delivery. The rule, as laid down in the leading cases and approved by this court, is stated in *Barrett* v. *Dodge* (1890), 16 R. I. 740, 19 Atl. 530, as follows:

> "By depositing the note in the mail with the intent that it shall be transmitted to the payee in the usual way, the maker parts with his dominion and control over it, and the delivery is in legal contemplation complete." *New* v. *Germania Fire Insurance Co., supra; Mactier's Admrs.* v. *Frith* (1830), 6 Wend. 103, 21 Am. Dec. 262; Note: 32 Am. Rep. 40.

It will be noted that in the rule as stated in the leading cases, the element of surrendering control is always present. In some of the decisions which rely upon the leading cases that element is not included in the statement of the rule. It is often said that the rule depends upon the fiction that the postoffice is the agent of both parties. But agency is a question of fact, and the courts have ever been conscious of the difficulty of an agent serving two masters. It appears that in England, and in this country for a considerable time at least prior to 1913, communications deposited in the mail could not be recovered by the depositor, and by depositing in the mail the depositor parted with his dominion and control over the communication. The

postoffice took control and possession for the addressee exclusively and bound itself to hold possession and control for him and to deliver to him. The postoffice, therefore, became the agent of the addressee and of no one else, and when it received the communication it received it for the addressee and for no one else, and when it took possession it was for the addressee and for no one else, and for the purpose of delivery to the addressee and for no other purpose. It follows that the postoffice was not the agent of both parties. And thus the situation fit the rule, and when a communication was delivered to the postoffice, the mailor, in fact, parted with his "dominion and control over it," and the delivery was in fact, as well as in legal contemplation, complete.

But in 1913 the Post Office Department adopted a regulation by the terms of which, under certain conditions, a communication which has been mailed may be recovered as a matter of right and without the consent or authority of the addressee. Under this regulation, when a communication is mailed it is as though it is entrusted to the sender's agent or servant for delivery, and is subject to recall at any time before actual delivery. Under any normal rule of construction, therefore, the postoffice must be deemed the agent of the sender since, under the circumstances, the rights and obligations of the sender and the postoffice are exactly the same as in the case of a private messenger or servant. And since the sender exercises absolute and complete control over the communication while it is in the hands of the postoffice, and until delivery, it is as though it is still in his own possession, and there has been no delivery within the rule laid down in the case of *Purviance* v. *Jones, supra.*

The postoffice has not always been considered the agent of both parties to a transaction. Payment is not

effectuated by depositing currency due the creditor in the mail, and until the remittance gets into the hands of the creditor he is not bound unless he expressly or by implication directs or consents that payment be so made. 48 C. J. 594, and cases cited.

And, under this rule, where money is deposited in the postoffice and is lost, the loss is upon the depositor.

In *Ex parte Cote* (1873), L. R. 9 Ch. App. Cases 27, the English Court of Appeals in Chancery, considered this question. A banker in Lyons, France, indorsed bills of exchange to a merchant in London, and mailed them in the post office at Lyons. Under the postal regulations of France, the sender was entitled to recover the letter from the mail if he made due application. For reasons sufficient to him, the Lyons banker decided to withdraw the letter from the mail. It was contended that delivery was effected by the posting of the letter. The English Court, in deciding that there was no delivery, said:

"In order to make the property in the bills pass, it is not sufficient to indorse them; they must be delivered to the indorsee, or to the agent of the endorsee. If the indorser delivers them to his own agent, he can recover them; if to the agent of the indorsee, he cannot recover them.

The question therefore arises, of which party the postoffice is the agent. In this country, where the sender of a letter cannot get it returned after it has been posted, if the indorsee of a bill authorizes the indorser to send the bill through the postoffice, the bill, as soon as it is posted, becomes the property of the indorsee. But according to the regulations of the French postoffice, a person who posts a letter may get it back on complying with certain forms at any time before the letter has left the town where it is posted. I am inclined to think that the effect of that rule is that the postoffice is the agent of the sender of the letter until it leaves the town, and that the indorsement of the bills contained in it is not complete till the letter is despatched from the town."

In the case of *Traders' National Bank* v. *First National Bank* (1920), 142 Tenn. 229, 217 S. W. 977, 9 A. L. R. 382, in which the facts were almost identical with those in the instant case, the court followed the reasoning of the English case. But after deciding the question involved, the court said:

"In ordinary cases we will adhere to the old rule that the mailing of a letter amounts to a delivery of its contents to the person to whom it is addressed. This, however, is subject to the power of the person sending the letter to recover it from the mails, under the postal regulations of 1913. Such a delivery is, therefore, subject to be defeated by the proper exercise of such power."

If the postoffice is the agent of the sender in a case involving the mailing of a draft, because of the fact that the sender may recover the same, how can it be said that it is not the agent of the sender in the case of an acceptance of an offer which is subject to the same regulation? No rule of construction has been suggested that would permit of treating a messenger from whom a message may be recalled as the agent of any one but the sender.

The time at which payment would become effective or a contract consummated by acceptance of an offer is controlled by contract, express or implied. The parties are bound to know the rules and regulations of the Postoffice Department and must be considered as acting in the light of those rules and, unless it appears by expression or implication that the parties intended that the acceptor or remittor should have no right to withdraw his communication after mailing, it must be assumed that they intended that he should continue to exercise control of it, and that, therefore, following the normal rules of interpretation, the postoffice should be his agent.

We conclude that the postoffice is the agent of the

sender so long as the communication may be withdrawn by him, regardless of whether the transaction be treated as a payment or an acceptance of an offer to contract and, therefore, the evidence supports the verdict of the jury.

In view of our conclusion, there was no error prejudicial to appellant in giving or refusing instructions.

Appellant urges that the court erred in admitting in evidence as an exhibit the claim filed by the Guardian National Bank in the matter of the Steinbrenner Rubber Company receivership, which claim it is contended was based upon an entirely different transaction. The evidence was irrelevant and immaterial, but we are unable to see how appellant could be injured thereby, nor how the jury could have reached any other conclusion than it did under the evidence.

Judgment affirmed.