Robert C. ROMAIN and Ronald D. Romain, Appellants (Defendants Below),

v.

A. HOWARD WHOLESALE COMPANY and Mid-South Development Company, Inc., Appellees (Plaintiffs Below).

No. 82A01–8609–CV–248.

Court of Appeals of Indiana, First District.

April 30, 1987.

Rehearing Denied June 8, 1987.

Paul J. Wallace, Cedric Hustace, Bowers, Harrison, Kent & Miller, Evansville, for appellants.

Brian P. Williams, Kahn, Dees, Donovan & Kahn, Evansville, for appellees.

ROBERTSON, Justice.

Robert C. Romain and Ronald D. Romain (Romains), defendants-appellants, appeal an order of the Vanderburgh Superior Court, directing them to specifically perform an option contract for the purchase and sale of certain realty entered into with the plaintiff-appellee, A. Howard Wholesale

Company (Howard). The Romains contend that Howard failed to properly exercise the option before its expiration.

We agree, and reverse.

The dispute revolves around the language of paragraph two of the option. The option reads in relevant part, as follows:

1. Granting of Option: In consideration of the sum of Ten and no/100 Dollars ($10.00) whereinafter called the "Option Payment" paid to Grantor, the receipt of which is hereby acknowledged, Grantor hereby grants to Grantee the exclusive and irrevocable option from the date hereof through and including 12–30–85, to purchase the Premises on the terms and conditions set forth in this Option.

2. Exercise of Option: Grantee shall exercise this Option to purchase on or before the above stated date of expiration of this Option by paying Grantor an additional option-exercise payment of Five Thousand Dollars ($5,000.00) and either (a) delivering to Grantor written notice of such exercise, or (b) mailing such notice by registered or certified mail to Grantor at Grantor's above-stated mailing address. In the event that this Option is not exercised on or before said date, this Option shall thereupon terminate, all rights, duties and obligations of all parties with respect hereto shall cease, and Grantor shall be entitled to retain all Option Payments as full payment for the Option granted hereunder.

3. Purchase Price and Option Payments: The purchase price for the premises shall be One Hundred Sixty One Thousand Dollars ($161,000.00) less (a) Ten Dollars of the original Option Payment, less (b) Five Thousand and no/100 Dollars of Option-exercise payment, less (c) assessments or other amounts to be paid by Grantor as hereinafter stated; to be paid upon the execution and delivery of the deed for the Premises as provided hereinafter.

4. Contract for Sale: In the event Grantee elects to exercise this option this agreement shall thereupon constitute an absolute agreement upon the Grantor to sell and the Grantee to purchase said above described real property upon the terms and conditions herein set forth.

\* \* \* \* \* \*

14. Governing Law: This Option and the Performance thereof shall be governed, interpreted, construed, and regulated by the laws of the State of Indiana.

The trial court took evidence only on the question of whether the consideration for the option had in fact been paid, the parties having stipulated that Howard's attorney attempted to exercise the option for Howard by notice letter dated December 30, 1985. Enclosed in the notice letter was a check from Howard through its affiliated company, Mid-South Development Co. in the amount of $5,000.00 payable to the Romains. The notice letter enclosing the check was mailed by certified mail, postmarked December 30, 1985 and received on or about January 2, 1986 by Huber Realtors, the agent who drafted the option contract under a listing agreement with the Romains. The parties further stipulated that the Romains by their attorney advised Howard by letter dated January 3, 1986 that the exercise of the option by Howard was deemed improper and tender of the check was rejected. The Romains have not negotiated the check.

Richard Rheinhardt of Huber Realty testified at trial that he prepared the option contract at issue by slightly modifying a form originally prepared by the Chicago Title Insurance Company. There is no evidence in the record as to what or why modifications were made; neither is there evidence of commonly accepted business custom with respect to payment of an option-exercise payment. The trial court entered judgment on a general verdict in favor of Howard directing specific performance of the option contract.

The Romains have presented several questions for our review. We find one issue, restated, to be dispositive:

Does the option contract entered into by the parties permit the option to be exercised by mailing the option-exercise payment on the date of the option's expiration?

## I.

■ As a general rule, the interpretation or legal effect of a contract is a question of law to be determined by the Court. *Kokomo Veterans, Inc. v. Schick* (1982), Ind. App., 439 N.E.2d 639, 643, *trans. denied.* The trial court's judgment comes before us clothed in a presumption of correctness, with the burden of showing reversible error upon the appellant. *Id.; Raymundo v. Hammond Civic Association* (1983), Ind., 449 N.E.2d 276. The determination of the trial court will be affirmed unless the evidence viewed in a light most favorable to the trial court leads uncontrovertibly to a conclusion opposite to the one reached, that is, the decision is contrary to law. *Kokomo Veterans, Inc. v. Schick, supra; Scott v. Anderson Newspapers, Inc.* (1985), Ind. App., 477 N.E.2d 553, 557, *trans. denied.*

## II.

■ The intention of the parties controls our decision with respect to the substance of agreements. *Scott v. Anderson Newspapers, Inc., id.* at 559. That intention is expressed by the clear language of the contract. *Id.* If the parties' intention is discernible from the written contract, and the terms of the contract are clear, we will not construe the contract, but will merely apply its provisions. *Id.* The unambiguous terms of the contract are conclusive. *Id.*

The parties to this transaction have prescribed precisely how Howard, the option holder, must exercise the option in order to bind the Romains to sell the real estate.

Grantee shall exercise this option ... on or before [12–30–85] ... by paying Grantor ... $5,000.00 *and* either (a) delivering Grantor written notice ...
    or
(b) mailing such [written] notice ... (emphasis added).

The language indicates, and the parties agree, that it takes two events to effectively exercise the option—the making of payment and the giving of notice within the time specified. While the parties are in agreement that the option contract permits the requirement of notice to be fulfilled by means of mailing, the Romains insist, with regard to the payment requirement, that the parties intended "paying" to mean "delivering" of payment within the life of the option. We believe that such an interpretation is mandated by the language and grammatical construction of the provision. Furthermore, the rationale for using the option contract as a means of contracting for the purchase and sale of real estate necessitates that we conclude, in the absence of a specific statement in the agreement to the contrary, that the parties intended the "option-exercise payment" be paid, i.e. delivered, to the Romains before the option's expiration.

■ As a general rule, language in a contract is given its plain and ordinary meaning, that is, that meaning given to the language by the community and ordinary reader. *Washington National Corporation v. Sears, Roebuck & Co.* (1985), Ind. App., 474 N.E.2d 116, 121, *trans. denied. See also, Robison v. Fickle* (1976), 167 Ind. App. 651, 340 N.E.2d 824, 829–830 *trans. denied.* Webster's New International Dictionary 1796–1797 (2d ed. 1943) indicates that one of the definitions of the verb "pay" is "to give in return for services, purchases, etc. in satisfaction of a promise, a moral debt or in retribution", and defines the noun "payment" as "the act of paying or giving compensation", "that which is paid, the thing given to discharge a debt or obligation, or in fulfillment of a promise." The act ordinarily contemplated by the use of the words "paying" and "payment", then, involves an element of giving—"to make over or yield possession by way of exchange; to deliver or hand over, as property, in exchange for something or in discharge of a debt or obligation." *Id.* at 1060.

■ Looking at the context in which the language at issue appears, we observe that the provision has been constructed in such a way as to be indicative of only one intent: only the requirement of notice could be effectuated by mailing before the option's expiration. Initially, we note that the parties separated the requirement of payment from the requirement of notice with the

conjunction "and." The correlative conjunctive pair "either ... or", appearing completely on the notice side of the conjunction, thus applies only to the requirement of notice. Additionally, the object of the gerund "mailing" is "notice", not "notice and payment."

We find further reason in paragraph fourteen of the option agreement to interpret "paying" as the delivery of payment. That section provides that the option shall be interpreted according to the laws of Indiana. The Indiana Supreme Court addressed the question whether payment was effective upon mailing in *Guardian National Bank v. Huntington County State Bank* (1933), 206 Ind. 185, 187 N.E. 388. In that decision, the court abolished the fiction that the post office is the common agent of both parties to a contract, establishing that the mailing of a letter is not actual payment of money that is enclosed. Recognizing that the time at which payment would become effective is controlled by contract, the court stated that unless it appears by expression or implication that the parties intended that the remittor should have no right to withdraw his communication after mailing, it must be assumed that the parties intended that the remittor should continue to exercise control over it. 206 Ind. at 195, 187 N.E. 388. Accordingly, payment is not effectuated by depositing currency in the mail. Until the remittance gets into the hands of the receiver, he is not bound unless he expressly or by implication directs or consents that payment be made by mailing. *Id.* at 194, 187 N.E. 388.

We find no indication in the option contract, express or implied, that the option giver intended payment to be effective upon mailing. Rather, the absence of direction with respect to the manner by which payment could be effectuated juxtaposed with the express statement that notice could, alternatively, be accomplished by mailing within the life of the option buttresses our conclusion that the parties

intended payment to be received by the optionor before December 30, 1985.[1]

Finally, we believe the very nature of an option contract compels us to view the "mailbox rule" of acceptance as inapplicable particularly as in this case where the parties have specified that time is of the essence of the agreement.

An option to purchase real estate is a contract by which the owner of the realty agrees with another person that the latter shall have the power to purchase such property at a fixed price within a certain period of time. *Bandy v. Myers* (1967), 141 Ind.App. 220, 223, 227 N.E.2d 183. By an option, the owner subjects himself to the liability of having to convey the property *if the option is exercised within the time and in the manner stipulated.* *Butsch v. Swallow* (1922), 78 Ind.App. 101, 106, 134 N.E. 877. (Emphasis in original).

Time is of the essence of the contract, in the broadest sense of the rule, where a contract leaves it optional with one party to do a certain thing at a specified time. *Bond v. Peabody Coal Co.* (1983) Ind.App., 450 N.E.2d 542, 547; *Barney v. Yazoo Delta Land Co.* (1913), 179 Ind. 337, 101 N.E. 96, 99. In such a case, the option giver subjects the option holder to a definite time for acceptance, i.e. performance of the conditions specified in the option. When that time expires, the option holder has received the full agreed equivalent of the price he paid for his option. He cannot complain when the courts refuse to give effect to an acceptance that is a minute late because there is no forfeiture. 1 A. Corbin, A Comprehensive Treatise on the Working Rules of Contract Law § 273 (1963). The failure of the option holder to comply with the option's terms deprives him of the right to demand the enforcement of the contract. *Bond v. Peabody Coal Co., supra.* The option holder loses the right to enforce the contract because

1. We also find support for this outcome in the following sources: RESTATEMENT (SECOND) OF CONTRACTS § 63, comment f (1979); 1A A. Corbin, A Comprehensive Treatise on the Working Rules of Contract Law § 264 at 521 (1963); G. Grismore, On Contracts § 52 at 103 (J. Murray Jr. 2d rev. ed. 1974); W. Page, The Law of Contracts § 2802, 2804, 2826 (2d ed. 1920).

the parties have, by expressed intention, provided so. 1 A. Corbin, *supra* at 593.

 Under an option contract then, the option holder has a firm and dependable basis for decision. His power of acceptance is absolute for the time agreed upon in the option contract. The option holder has no interests needing protection. He can act promptly and with confidence in reliance on the contract. There is thus no reason to extend the rule that acceptance is operative upon mailing since the option contract device itself fulfills the same purpose. *See* 1 A. Corbin, *supra,* § 78 at 336–337; G. Grismore, on Contracts § 52 at 103 (J. Murray Jr. 2d rev. ed. 1974). To impose such a rule, where the parties have not expressly provided, would alter the agreement by binding the option giver longer than originally agreed and would inflict upon the option giver the risk of delay avoided by entering into the option contract.

Accordingly, we conclude that the option agreement between the Romains and Howard was not effectively exercised within the time specified in the option. The judgment of the trial court directing specific performance of the contract is therefore reversed.

SHIELDS, P.J., and NEAL, J., concur.