### CALLY CURTIS COMPANY *v.* JOHN G. GROPPO, COMMISSIONER OF REVENUE SERVICES (13733)

PETERS, C. J., HEALEY, SHEA, CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued December 5, 1989—decision released March 27, 1990

*Richard K. Greenberg,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Shelagh P. McClure,* assistant attorney general, for the appellant (defendant).

*Christopher F. Droney,* with whom was *Michael L. Coyle,* for the appellee (plaintiff).

GLASS, J. This is an appeal from a judgment of the Superior Court sustaining an appeal by the plaintiff, Cally Curtis Company (Curtis), from an assessment by the defendant, commissioner of revenue services (commissioner), of Connecticut sales and use tax for the review period of January 1, 1982, through May 31, 1985 (review period). We find no error.

The facts stipulated by the parties may be summarized as follows. Curtis is a California corporation engaged in the business of producing, selling, leasing and distributing industrial films and videotapes (films) for personnel training purposes. In late 1985, the commissioner, acting through his representative, conducted a review of the books and records of Curtis for the period of January 1, 1982, through May 31, 1985. As a result of the review, the commissioner, pursuant to General Statutes § 12-411,[1] assessed a Connecticut use

[1] "[General Statutes] Sec. 12-411. THE USE TAX. (1) IMPOSITION AND RATE. An excise tax is hereby imposed on the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage, acceptance, consumption or any other use in this state or the acceptance or receipt of any services constituting a sale in accordance with subdivision (i) of subsection (2) of section 12-407, at the rate of seven and one-half per cent of the sales price of the property or the consideration paid for any such services.

"(2) LIABILITY FOR TAX. Every person storing, accepting, consuming or otherwise using in this state services or tangible personal property purchased from a retailer is liable for the tax. His liability is not extinguished until the tax has been paid to this state, except that a receipt from a retailer engaged in business in this state or from a retailer who is authorized by the commissioner, under such regulations as he may prescribe, to collect the tax and who is, for the purposes of this chapter relating to the use tax, regarded as a retailer engaged in business in this state, given to the purchaser pursuant to subsection (3) of this section is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers.

"(3) COLLECTION BY RETAILER. Every retailer engaged in business in this state and making sales of services or of tangible personal property for stor-

tax liability against Curtis in the amount of $5020.40 plus interest and penalty with respect to certain rentals and sales of films by Curtis to customers in Connecticut.

age, acceptance, consumption or any other use in this state, not exempted under this chapter, shall, at the time of making a sale or, if the storage, acceptance, consumption or other use is not then taxable hereunder, at the time the storage, acceptance, consumption or use becomes taxable, collect the use tax from the purchaser and give to the purchaser a receipt therefor in the manner and form prescribed by the commissioner. For the purpose of uniformity of tax collection by the retailer the tax brackets set forth in subsection (3) of section 12-408 pertaining to the sales tax shall be employed in the computation of the tax imposed by this section.

"(4) TAX AS DEBT. The tax required to be collected by the retailer constitutes a debt owed by the retailer to this state.

"(5) UNLAWFUL ADVERTISING. The provisions of subsection (4) of section 12-408 pertaining to the sales tax apply with equal force to the use tax.

"(6) SEPARATE STATEMENT OF TAX. The tax required to be collected by the retailer from the purchaser shall be displayed separately from the list price, the price advertised in the premises, the marked price, or other price on the sales check or other proof of sales.

"(7) UNLAWFUL ACTS. Any person violating the provisions of subsection (3), (5) or (6) shall be fined five hundred dollars.

"(8) REGISTRATION OF RETAILERS. Every retailer selling services or tangible personal property for storage, acceptance, consumption or any other use in this state shall register with the commissioner and give the name and address of all agents operating in this state, the location of all distribution or sales houses or offices or other places of business in this state and such other information as the commissioner may require.

"(9) PRESUMPTION OF PURCHASE FOR USE; RESALE CERTIFICATE. For the purpose of the proper administration of this chapter and to prevent evasion of the use tax and the duty to collect the use tax, it shall be presumed that services or tangible personal property sold by any person for delivery in this state is sold for storage, acceptance, consumption or other use in this state until the contrary is established. The burden of proving the contrary is upon the person who makes the sale unless he takes from the purchaser a certificate to the effect that the property is purchased for resale.

"(10) EFFECT OF CERTIFICATE. The certificate relieves the person selling the services or property from the burden of proof only if taken in good faith from a person who is engaged in the business of selling services or tangible personal property and who holds the permit provided for by section 12-409 and who, at the time of purchasing the services or tangible personal property, intends to sell it in the regular course of business or is unable to ascertain at the time of purchase whether the service or property will be sold or will be used for some other purpose.

During the review period, Curtis was engaged in the sale and rental of its films to customers in Connecticut. None of the rentals exceeded three days. Some of the sales and rentals resulted from preview transactions in which customers were allowed to examine films for three days before deciding whether to purchase or rent them for training purposes.[2] During the review period, the gross receipts for sales, rentals for training purposes and previews to customers in Connecticut were as follows:

| "Year | Preview | Rental | Sales | Totals |
|-------|---------|--------|-------|--------|
| 1982 | $1,640.00 | $5,162.60 | $13,325.95 | $20,128.55 |
| 1983 | $1,240.00 | $3,910.00 | $ 9,943.60 | $15,093.60 |
| 1984 | $1,680.00 | $5,020.00 | $16,618.60 | $23,318.60 |
| 1985 | $ 490.00 | $2,073.00 | $ 5,834.65 | $ 8,397.65 |
| | $5,330.00 | $15,885.60 | $45,722.80 | $66,938.40" |

"(11) FORM OF CERTIFICATE. The certificate shall be signed by and bear the name and address of the purchaser, shall indicate the number of the permit issued to the purchaser and shall indicate the general character of the service or tangible personal property sold by the purchaser in the regular course of business. The certificate shall be substantially in such form as the commissioner may prescribe.

"(12) LIABILITY OF PURCHASER. (a) If a purchaser who gives a certificate makes any storage or use of the service or property other than retention, demonstration or display while holding it for sale in the regular course of business, the storage or use is taxable as of the time the service or property is first so stored or used.

"(b) Notwithstanding the provisions of subdivision (a) of this subsection, any storage or use by a certificated air carrier of an aircraft for purposes other than retention, demonstration or display while holding it for sale in the regular course of business shall not be deemed a taxable storage or use by such carrier as of the time the aircraft is first stored or used by such carrier, irrespective of the classification of such aircraft on the balance sheet of such carrier for accounting and tax purposes.

"(13) PRESUMPTION OF PURCHASE FROM RETAILER. It shall be presumed that tangible personal property shipped or brought to this state by the purchaser was purchased from a retailer for storage, use or other consumption in this state."

[2] The parties agree that the following is an accurate description of a typical transaction. If a customer wished to preview a film before deciding whether to purchase or rent it for training purposes, Curtis would provide the cus-

For the review period, Curtis marketed its sales and rentals in Connecticut only through: (a) trade shows held in states other than Connecticut, at which catalogs were distributed to patrons; (b) mailing lists; and (c) referrals. Catalogs were mailed to Connecticut customers identified on mailing lists or by referrals. Curtis did not utilize the services of any (a) salesmen, personnel or independent representatives in or visiting Connecticut, (b) own or rent offices or warehouses, or any inventory, in Connecticut, or (c) advertise by newspaper, radio or television in Connecticut. A Connecticut customer who wished to order a film from Curtis would have had to complete a purchase or rental order for the film and have sent it to Curtis at its California offices for acceptance in California. In addition, all deliveries and returns of films to and from customers in Connecticut, by sale or rental, were made by common carrier or the United States mail. Curtis had no telephone in Connecticut, nor any property in Connecticut other than the films previewed or rented, and Curtis did not visit its customers in Connecticut.

By way of letters dated December 21, 1985, and January 29, 1986, Curtis duly protested and appealed the assessment with the department of revenue services. On May 27, 1986, the commissioner issued a final determination letter in which he ruled that the assessment was proper and, therefore, denied Curtis' appeal. Curtis then appealed the commissioner's final determination to the Superior Court pursuant to General Statutes § 12-422. Before the trial court, Curtis claimed that the commissioner "wrongfully assessed sales or

---

tomer with a film to preview for a charge. In this transaction, Curtis would send the film to the customer, who would then be permitted to use the film for three days for evaluation purposes, not for training, and the film must then be returned to Curtis. At all times, Curtis remained the owner of the film. If a customer decided to rent or purchase the same film within sixty days, Curtis then deducted the preview charge from the rental or purchase price.

use tax against [it] because it [did] not have the level of contacts or nexus with Connecticut necessary to tax a foreign corporation; and it contends that without such contacts or nexus, the tax assessed against it by the commissioner violates the Due Process and Commerce Clauses." Conversely, the commissioner contended that "personal property within a taxing state is a sufficient nexus between the taxing state and the entity being taxed to satisfy due process; [and] that Curtis is leasing and thus maintaining films and videotapes, which are personal property, within Connecticut." The trial court sustained Curtis' appeal, stating that "the presence in Connecticut of Curtis' films which are then being leased to its customers in Connecticut is not the kind of 'property within [the taxing] State . . .' which constitutes a nexus sufficient to satisfy Constitutional requirements." The commissioner then appealed the judgment of the trial court to the Appellate Court and we thereafter transferred the case to ourselves pursuant to Practice Book § 4023.

On appeal, the commissioner argues that the trial court erred in ruling that there was an insufficient nexus between Curtis and the state of Connecticut to subject Curtis to the Connecticut use tax. We disagree. Not every out-of-state seller can be held liable for obtaining payment for use tax without a constitutional violation occurring. Such a collection burden when placed upon an out-of-state seller triggers due process concerns as well as imposes a restraint upon interstate commerce. See *National Bellas Hess, Inc.* v. *Department of Revenue,* 386 U.S. 753, 756, 87 S. Ct. 1389, 18 L. Ed. 2d 505 (1967); *L.L. Bean, Inc.* v. *Department of Revenue,* 516 A.2d 820, 824 (Pa. Cmwlth. 1986). In determining whether a state tax comports with constitutional due process requirements, the United States Supreme Court has stated that the " 'simple but controlling question is whether the state has given any-

thing for which it can ask return.' " *National Bellas Hess, Inc. v. Department of Revenue,* supra, quoting *Wisconsin* v. *J. C. Penney Co.,* 311 U.S. 435, 444, 61 S. Ct. 246, 85 L. Ed. 267 (1940). In regard to the question of restraint on interstate commerce, the United States Supreme Court has held that " '[s]tate taxation falling on interstate commerce . . . can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys.' " *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, quoting *Freeman* v. *Hewit,* 329 U.S. 249, 253, 67 S. Ct. 274, 91 L. Ed. 265 (1946). Accordingly, when examining the constitutionality of imposing the duty of collection of a use tax upon an out-of-state seller, the relevant legal inquiry is whether there exists " 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to tax.' " *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, quoting *Miller Brothers Co.* v. *Maryland,* 347 U.S. 340, 344–45, 74 S. Ct. 535, 98 L. Ed. 744 (1954); see *L.L. Bean, Inc.* v. *Department of Revenue,* supra. The existence of such a link or nexus will thus turn upon the individual facts of each case. See *L.L. Bean, Inc.* v. *Department of Revenue,* supra.

"Case law has established that a sufficient nexus is found to exist where local agents of the seller are present in the taxing state. *Felt & Tarrant Manufacturing Co.* v. *Gallagher,* 306 U.S. 62, 59 S. Ct. 376, 83 L. Ed. 488 (1939); *General Trading Co.* v. *State Tax Commission of the State of Iowa,* 322 U.S. 335, 64 S. Ct. 1028, 88 L. Ed. 1309 (1944). A similar result has been reached where the seller has local retail stores which are present in the taxing state. *Nelson* v. *Sears, Roebuck & Co.,* 312 U.S. 359, 61 S. Ct. 586, 85 L. Ed. 888 (1941) . . . . And in *National Geographic Society* [v. *California Equalization Board,* 430 U.S. 551,

97 S. Ct. 1386, 51 L. Ed. 2d 631 (1977)], the presence in the taxing state of two offices which solicited advertisements and received the benefit of municipal protection (fire, police, etc.) was held a sufficient nexus." *L.L. Bean, Inc.* v. *Department of Revenue,* supra, 824–25.

In *Miller Brothers Co.* v. *Maryland,* supra, however, the United States Supreme Court held that Maryland "could not constitutionally impose upon a Delaware seller an obligation to collect use taxes where the Delaware firm had no retail outlets or sales solicitors in Maryland, despite the presence of advertising in Maryland which resulted in substantial sales and the delivery of goods into Maryland by the seller using its own trucks and drivers." *L.L. Bean, Inc.* v. *Department of Revenue,* supra, 825. Furthermore, in *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, the United States Supreme Court found an insufficient nexus where the only contacts between the seller and the taxing state were through the United States mail or common carrier.

In *National Geographic Society* v. *California Board of Equalization,* supra, 559, the United States Supreme Court stated the following regarding *National Bellas Hess, Inc.:* "Illinois subjected appellant Bellas Hess, a national mail-order house centered in Missouri, to use tax liability based upon mail-order sales to customers in that State. Bellas Hess owned no tangible property in Illinois, had no sales outlets, representatives, telephone listings, or solicitors in that State, and did not advertise there by radio, television, billboards, or newspapers. It communicated with potential customers by mailing catalogues throughout the United States, including Illinois, twice a year and occasionally supplemented this effort by mailing out 'flyers.' All orders for merchandise were mailed to Bellas Hess' Missouri plant, and the goods were sent to customers by mail

or common carrier. *Bellas Hess* held that, constitutionally, the basis for the requisite nexus was not to be found solely in Bellas Hess' mail-order activities in the State. The Court's opinion carefully underscored, however, the 'sharp distinction . . . between mail order sellers with retail outlets, solicitors, or property within [the taxing] State, and those [like Bellas Hess] who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business.' [*National Bellas Hess, Inc.* v. *Department of Revenue,* supra, 758.]"

In the present case, the facts are remarkably similar to those of *National Bellas Hess, Inc.* Just as all of Bellas Hess' contacts with Illinois were via the United States mail or common carrier, all of Curtis' contacts with Connecticut were via the United States mail or common carrier. The commissioner argues, however, that *National Bellas Hess, Inc.,* is distinguishable from the instant case by virtue of the fact that, unlike Bellas Hess, Curtis did not merely sell, but rather, also *leased* property (films) in Connecticut. Therefore, the commissioner contends that, since Curtis retained title to the films while they were previewed or leased in Connecticut, Curtis had property in the state, which in turn, constituted a sufficient nexus to the state to subject Curtis to the state's use tax. We disagree.

As to the question of "whether the state has given anything for which it can ask return," under the facts of this case, we discern no significant difference between a sale and a three day preview or lease of the films. See *National Bellas Hess, Inc.* v. *Department of Revenue,* supra; *Freeman* v. *Hewit,* supra; *Wisconsin* v. *J. C. Penny Co.,* supra. The commissioner relies on *Union Oil Co. of California* v. *Board of Equalization,* 60 Cal. 2d 441, 386 P.2d 496, 34 Cal. Rptr. 872 (1963), appeal dismissed, 377 U.S. 404, 84 S. Ct. 1629, 12 L. Ed. 2d 495 (1964), to support his assertion that a suf-

ficient nexus existed.[3] We find the facts of *Union Oil Co. of California,* however, to be inapposite. In *Union Oil Co. of California,* the California Supreme Court held that an out-of-state lessor of two oil tankers to a California lessee was liable for California's use tax because the tankers were physically used within the state. This fact pattern is distinguishable from the present case, however, because, unlike Curtis' films, the out-of-state lessor's property clearly enjoyed benefits bestowed upon it by the local government such as use of harbors, and fire and police protection.

In short, just because Curtis leased instead of sold the films in Connecticut, does not mean that Curtis " 'receiv[ed] benefits from [Connecticut] for which [Connecticut] has the power to exact a price.' " *National Bellas Hess, Inc.* v. *Department of Revenue,* supra, quoting *Nelson* v. *Sears, Roebuck & Co.,* supra, 365. Although Curtis did have property (films) within Connecticut, such contact with Connecticut, like the contact of the appellant's delivery trucks with Maryland in *Miller Brothers Co.* v. *Maryland,* supra, was de minimus, as the films were only in the state for three day periods, and did not benefit from the services of local government.

In conclusion, we hold that the trial court properly ruled that there was an insufficient nexus between Cur-

---

[3] Furthermore, the commissioner relies upon *In re Heftel Broadcasting Honolulu, Inc.,* 57 Haw. 175, 554 P.2d 242 (1976), cert. denied, 429 U.S. 1073, 97 S. Ct. 811, 50 L. Ed. 2d 791 (1977), to support his assertion that a sufficient nexus existed. This case, too, is inapposite. In *Heftel,* the Supreme Court of Hawaii upheld an assessment of a privilege tax by the state of Hawaii against taxpayers located out-of-state who licensed films to be shown on television in Hawaii. Specifically, CBS Enterprises, Inc., entered into license agreements under which Hawaii television stations were granted the right to show certain CBS films. In finding an adequate nexus to override the constitutional prohibitions, however, the court held that "physical presence of CBS' films was not the only contact with Hawaii," and also relied on the licensing arrangement for the films as constituting a continuing activity in the state of Hawaii. Id., 182.

tis and the state of Connecticut to subject Curtis to the Connecticut use tax pursuant to General Statutes § 12-411.

There is no error.

In this opinion PETERS, C. J., HEALEY, CALLAHAN, COVELLO and HULL, Js., concurred.

SHEA, J., dissenting. I disagree with the conclusion reached by the majority that there is an insufficient "nexus" between the plaintiff and this state to justify, under the due process clause, the imposition of the duty to collect use taxes on transactions with customers in Connecticut. The fact that the plaintiff owns property in the form of training films in this state from which it receives rental fees of substantial sums is a sufficient relationship, as the commissioner contends. The protection of these films, like all property in this state, through the services of policemen and firemen is a benefit provided to the plaintiff by the state "for which it can ask return." *Wisconsin* v. *J. C. Penney Co.,* 311 U.S. 435, 444, 61 S. Ct. 246, 85 L. Ed. 267 (1940).

The reliance of the majority opinion on *National Bellas Hess, Inc.* v. *Department of Revenue,* 386 U.S. 753, 87 S. Ct. 1389, 18 L. Ed. 2d 505 (1967), is misplaced, because the court in that case expressly recognized the "sharp distinction . . . drawn between mail order sellers with retail outlets, solicitors, or *property* within a State, and those who do no more than communicate with customers in the State by mail or common carrier as part of a general interstate business." (Emphasis added.) Id., 758. This plaintiff does more than communicate with Connecticut customers, because it owns property of substantial value in this state from which it receives rental payments on a continuing basis. This business activity of the plaintiff is plainly distinguishable from the mail order sales con-

sidered in *National Bellas Hess, Inc.,* in which the seller's interest in the item sold terminates on passage of title to the buyer.

Accordingly, I dissent.