[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM FILED FEBRUARY 1, 1995
The issue in this tax appeal is whether catalogs mailed from out of state to Connecticut residents by an out-of-state retailer maintaining retail stores in Connecticut is subject to the Connecticut sales and use tax.
The resolution of this issue is the focal point of this appeal by Sharper Image Corporation (Sharper Image) from the imposition of a use tax by the commissioner of revenue services (commissioner) on its catalogs mailed to Connecticut residents. CT Page 1402-B
The parties have stipulated to the following facts:
Sharper Image is a Delaware corporation with headquarters in San Francisco, California. Sharper Image is engaged nationally and internationally in the retail sale of merchandise. It makes in-store sales and mail order sales.
In Connecticut, Sharper Image maintains one store in Stamford and one store in Hartford. In addition to its store sales, Sharper Image makes sales by means of telephone or mail orders transmitted to its San Francisco office.
Sharper Image collects and remits to the commissioner the Connecticut sales and use taxes levied on sales made at its stores in Connecticut and on its mail order sales. Sharper Image concedes that it has nexus with Connecticut for purposes of sales and use tax collection.
Sharper Image publishes catalogs on a monthly basis. The catalogs advertise the products that are available for sale both by mail or phone order and in general at the retail stores, although some products are exclusively mail order products so they cannot be purchased at the store.
Sharper Image contracts for the printing and distribution of catalogs from its San Francisco headquarters. Sharper Image has entered into a contract with Mid-American Web Press, Inc. dba Foote Davies ("Foote Davies") of Lincoln, Nebraska for the printing and mailing of the catalogs to persons residing in foreign countries and throughout the United States, including Connecticut. All instructions and payments to Foote Davies are made from Sharper Image's San Francisco headquarters. The total number of catalogs printed for Sharper Image are as follows: 1988 — 33.9 million; 1989 — 40.1 million; 1990 — 34.3 million. Approximately two percent of all catalogs printed for Sharper Image are sent to Connecticut residents.
Sharper Image has not contracted with any third CT Page 1402-C parties located in Connecticut for the printing or distribution of the catalogs, and none of Sharper Image's Connecticut employees are involved in any way with the printing or distribution of the catalogs that are the subject of the assessment in this action.
The catalogs are printed and labelled by Foote 
Davies. Foote Davies transfers the completed catalogs to the post office by way of U.S. Post Office trailers which are located at Foote Davies' facility in Lincoln, Nebraska.
Sharper Image's San Francisco headquarters provides Foote Davies with a mailing list, which contains the names of customers or prospective customers to whom catalogs are to be sent. The catalogs are addressed to the person named or the current resident at the address listed on the label, and are sent by third class mail.
Neither Sharper Image nor Foote Davies can withdraw or redirect the catalogs from the U.S. mail once they are placed in the U.S. Post Office trailers. If catalogs are not delivered to the addressee, Sharper Image does not receive a refund or credit from the post office for the postage or the value of the catalogs lost. If the U.S. Post Office is unable to deliver a catalog, it is destroyed by the post office.
Sharper Image has never withdrawn or redirected the catalogs from the U.S. mail. Sharper Image has never taken physical possession of the catalogs mailed to Connecticut residents.
On December 1, 1991, the department of revenue services (department) issued a notice of assessment of use taxes to Sharper Image, based on the sales price of catalogs sent by Foote Davies to Sharper Image's customers and prospective customers who are Connecticut residents. The commissioner imposed the use tax on Sharper Image pursuant to General Statutes § 12-411
and § 12-407(5). The commissioner's position is that Sharper Image made a taxable use of the catalogs mailed from out of state to Connecticut residents. On January 21, 1992, Sharper Image filed a protest of the assessment. CT Page 1402-D On March 14, 1994, a department hearing officer upheld the assessment insofar as liability for catalogs mailed into Connecticut. The revised assessment consists of $52,466.70 of use taxes, $2,218.33 of penalty and $45,471.35 of interest through March 31, 1994. The revised assessment is based on the sales price of catalogs sent by Foote Davies of Lincoln, Nebraska to Sharper Image's customers. Sharper Image does not contest the amount of the taxes assessed on the catalogs, but rather challenges any assessment on catalogs mailed to Connecticut residents.
In addition to the catalogs mailed to Connecticut residents, Foote Davies mails catalogs to Sharper Image's Connecticut stores where they are available for employees and customers of the stores. Sharper Image paid the use tax on these catalogs because they were received in Connecticut by its Connecticut employees at its Connecticut stores.
Sharper Image claims that the controlling issue in this case is the ownership of the catalogs. Sharper Image maintains that it did not own the catalogs as they passed into Connecticut because it did not exercise any right or power incident to the ownership of the catalogs upon which to base the imposition of a use tax. According to Sharper Image, both the exercise of a right or power over the catalogs and the ownership of the catalogs must occur in Connecticut. Sharper Image also contends that, as to the activity of distributing catalogs to Connecticut residents, the constitutionally required nexus between the distribution of the catalogs and Connecticut does not exist.[1]
More specifically, Sharper Image claims that its ownership rights in the catalogs terminated at the time that Foote Davies delivered the catalogs to the U.S. Post Office for shipment to Connecticut residents. On this basis, Sharper Image argues that it was not the owner of the catalogs when they were taken by the post office from Nebraska to Connecticut.
Our analysis must begin with an examination of the sales and use tax statute, and a determination of the party upon whom the liability for payment of the tax falls. CT Page 1402-E
Whereas a sales tax is a tax on the purchase of goods, the use tax is a tax on the enjoyment of that which was purchased. International Business Machines Corporationv. Brown, 167 Conn. 123, 129, 355 A.2d 236 (1974). "The use tax was created as a complementary measure to insure the equitable diffusion of the tax burden upon both in-state purchases of tangible personal property and out-of-state purchases of tangible personal property where such property is used, stored or consumed within the state." Id. When tangible personal property is purchased out of state and brought into Connecticut to be stored, consumed, or used, the party who makes that purchase is the purchaser and bears the obligation to pay the use tax. Robert Emmet Son Oil Supply Co. v.Sullivan, 158 Conn. 234, 238-39, 259 A.2d 636 (1969);Avco Mfg. Corporation v. Connelly, 145 Conn. 161, 172-73140 A.2d 479 (1958). The party who purchases tangible personal property acquires the incidents of ownership over that property. Avco Mfg. Corp. v. Connelly,supra, 173.
Pursuant to General Statutes § 12-411, the use tax is imposed on "the storage, acceptance, consumption or any other use in this state of tangible personal property purchased from any retailer for storage. acceptance consumption or any other use in this state." General Statutes § 12-407(5) defines "use" as follows: "`Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business."
In order to create tax liability under our use tax statute, three conditions must exist: "First, there must be a purchase of tangible personal property; second, the purchase must have been made for the purpose of storage, use or other consumption in this state; and, third there must have been such storage, use or other consumption." Magic II Inc. v. Dubno, supra, 256, quoting Stetson v. Sullivan, 152 Conn. 649, 653,211 A.2d 685 (1965).
Our analysis next carries us to consider the decisions CT Page 1402-F of courts in other states, which Sharper Image contends support its theory of non-taxability of catalogs mailed from out of state. Sharper Image cites several cases in which courts have held that the mailing of catalogs from out of state is not a taxable "use" of the catalogs because the out of state company does not have sufficient right, power or control over the catalogs so as to be said to have "used" the catalogs within the state attempting to tax the company. See, e.g., Modern Merchandising, Inc. dba LaBelle's v. Departmentof Revenue, 397 N.W.2d 470 (S.D. 1986);Wisconsin Dept. of Revenue v. J.C. Penney Co.,108 Wis.2d 662, 323 N.W.2d 168 (1982); Department ofRevenue v. Horne Directory, Inc., 105 Wis.2d 52,312 N.W.2d 820 (1981). In Modern Merchandising, the court, faced with facts very similar to those stipulated in this case, held that "[a]ll control over the present literature within our state belonged to either the post office or the advertising recipients." Modern Merchandising Inc. v.Department of Revenue, supra, 472. The court cited no authority for this conclusion other than, we assume to equate physical control of the catalogs by the post office to the statutory definition of "use" as the exercise of right or power over tangible personal property. Id. We find this reasoning unpersuasive. In our case, Foote Davies gave up possession and control to the U.S. Post Office at the direction of Sharper Image. The direction by the retailer of the mailings of the catalogs in Modern Merchandising
was not raised as an issue.
In J.C. Penney, cited in Modern Merchandising, supra,
the court concluded that the printer was the owner of the catalogs, not the post office or the recipients of the catalogs. Wisconsin Dept. of Revenue v. J.C. Penney,
323 N.W.2d 170. The Wisconsin statute at issue in J.C.Penney defined "use" to include two elements "(1) the taxpayer must own, possess, or enjoy the property in Wisconsin; and (2) the taxpayer must exercise some right or power over the tangible personal property." Id., 169-70; see Wis. Stat. § 77.51(15) (1975). The court in J.C.Penney found that the second element of the "use" test was not met "[b]ecause the catalogs moved by mail or common carrier from [out of state] to Wisconsin . . . remained the property of the printer until they were delivered." Wisconsin Dept. of Revenue v. J.C. Penney Co.,CT Page 1402-Gsupra, 170. The court stated that "[a]fter delivery, the recipients assumed ownership of the catalogs and were free to read, store or destroy them." Id. The court concluded that "J.C. Penney did not exercise a consumptive right or power over the catalogs in Wisconsin." Id.
Another Wisconsin case dealing with the taxability of interstate mailings was Horne Directory, supra,312 N.W.2d 820. The court in Horne Directory reasoned that Horne was not subject to the Wisconsin use tax because it exercised no possession, control or ownership of telephone directories printed in Illinois and mailed to Wisconsin residents. In both J.C. Penney Co. and HorneDirectory, the court relied upon a Wisconsin statute providing that carriers are deemed agents of the printer, regardless of any agreement between the parties. Departmentof Revenue v. Horne Directory Inc., supra, 824, citing Wis. Stat. § 77.51(4r) (1977); Wisconsin Dept. of Revenuev. J.C. Penney Co., supra, 323 N.W.2d 170, citing Wis. Stat. § 77.51(4r) (1975). Pursuant to § 77.51(4r), which governs the timing of transfer of ownership of property for tax purposes, "ownership of the directories remained with the printer at all times prior to their physical delivery to the telephone company subscriber." Department ofRevenue v. Horne Directory Inc., supra.
We disagree with Sharper Image that the courts' holdings in J.C. Penney Co. and Horne Directory support its position. We find no Connecticut statute governing timing of transfer of ownership of property for use tax purposes. Unlike Wisconsin, Connecticut has no tax statute governing ownership and agency of carriers.
The commissioner's position, contrary to that of Sharper Image is that the act of distributing the catalogs from out of state into Connecticut is a use of that property within the borders of Connecticut. In support of this position, the commissioner relies onD.H. Holmes Co. v. McNamara, 486 U.S. 24,108 S.Ct. 1619, 100 L.Ed.2d 21 (1988) and K Mart Corporationv. Idaho State Tax Commission, 111 Idaho 719,727 P.2d 1147 (1986). The commissioner argues that D.H.Holmes is controlling because the distribution of catalogs in Connecticut falls within the "any other use" language in General Statutes § 12-411(1). CT Page 1402-H
D.H. Holmes was a Louisiana corporation that owned and operated thirteen stores in Louisiana. It had approximately 1,500,000 customers in Louisiana. D.H. Holmes contracted with several New York companies for the design, printing and direct mailing of catalogs to Louisiana residents. The catalogs were mailed from places outside Louisiana. D.H. Holmes admitted that the purpose of the catalogs was to promote sales at its stores and to instill name recognition in future customers. The Louisiana Department of Revenue and Taxation assessed a use tax, which by statute was imposed on all tangible personal property used in Louisiana.
The statute at issue in D.H. Holmes, La.Rev.Stat.Ann. § 47:302, provides that "[t]here is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution,
and the storage for use or consumption in this state, of each item or article of tangible personal property." (Emphasis added.) "`Use' as defined elsewhere in the statute, is the exercise of any right or power over tangible personal property incident to ownership, and includes consumption, distribution, and storage. See La.Rev.Stat.Ann. §§ 47:301(18) and (19) (West 1970 and Supp. 1988)." D.H. Holmes Co. v. McNamara, supra,486 U.S. 27. The Louisiana Court of Appeal made a factual determination that the "distribution" of the catalogs constituted "use" by D.H. Holmes under the Louisiana use tax statute, and the U.S. Supreme Court relied on this determination. Id., 29.
We view Sharper Image's attempt to distinguish between the Louisiana "distribution" of catalogs inD.H. Holmes and the Connecticut definition of "any other use" of catalogs, as a distinction without a difference. Factually, the catalogs of D.H. Holmes and of Sharper Image were mailed from out of state to customers in state. Both D.H. Holmes and Sharper Image maintained control of the catalogs as they were delivered into the taxing state for the same short period of time. To say that there is a difference between the two, other than the inclusion of the term "distribution" in one versus the broader "any other use" in Connecticut, is to exalt labels over substance. SeeMcLeod v. J.E. Dilworth Co., 322 U.S. 327, 331, 64 CT Page 1402-I S.Ct. 1023, 88 L.Ed. 1304 (1944).
In K Mart, the court held that K Mart was liable for payment of a use tax on the cost of purchase of advertising supplements printed out of state for insertion into Idaho newspapers. K Mart Corporation v.Idaho State Tax Commission, supra, 727 P.2d 1149. The Idaho use tax statute tracks almost verbatim the Connecticut statute defining use: "`use' includes the exercise of any right or power over tangible personal property incident to ownership or the leasing of that property." Idaho Code § 63-3615(b) (1974-1977).
The court in K Mart found that K Mart purchased the inserts from the out-of-state printer, and therefore owned the inserts until "it gives away the inserts to newspaper purchasers, even though it never takes possession of the inserts." K Mart Corporation v. Idaho StateTax Commission, supra, 727 P.2d 1148-49. The court further found: "Incident to and evidencing that ownership, K Mart contracts with the printer to have the inserts delivered to various Idaho newspapers [and] [u]nder additional contracts, K Mart obligates the newspapers to include a specific number of the inserts in the newspapers on certain dates." Id., 1149. The court in K Mart
held that "all advertising is used by advertisers, such as K Mart, for the purpose of making sales and profits. In light of this and the exercise by K Mart, through its contracts, of rights and powers over the inserts incident to their ownership, K Mart uses the inserts within the meaning of the use tax statute." Id.
We find the reasoning in D.H. Holmes and K Mart to be persuasive. We find that Sharper Image meets the three conditions for liability under the Connecticut use tax statute recited in Magic II Inc. v. Dubno, supra,206 Conn. 256. The parties have stipulated to the existence of the first condition. Sharper Image purchased the catalogs from Foote Davies to be sent to Sharper Image's customers and prospective customers in Connecticut. The second condition has also been met since the parties have stipulated that the purpose of purchasing the catalogs from Foote 
Davies was to mail the catalogs to Sharper Image's customers and prospective customers advertising CT Page 1402-J products that are available for sale both by mail or phone order and at the stores. The third condition was met when the catalogs were mailed by Foote Davies, at the direction of Sharper Image, and the post office transported the catalogs into Connecticut for delivery to the Connecticut addressees. General Statutes § 12-411
does not require a major use in the state. "Even a very brief and limited use is sufficient to justify the imposition of the tax." Id., 257. The use made of the catalogs by Sharper Image in this case is no different from the use of the catalogs in D.H. Holmes.
Sharper Image argues that Hoffman-LaRoche, Inc.v. Porterfield, 16 Ohio St.2d 158, 243 N.E.2d 72 (1968), supports its position that catalogs sent from outside of a state do not constitute a use in that state. InHoffman-LaRoche, a New Jersey pharmaceutical manufacturer mailed promotional material to physicians in Ohio. The court in Hoffman considered the promotional material sent to Ohio as gifts, with the gifting taking place outside of Ohio, and therefore the material was not stored, used or consumed by the manufacturer in Ohio. In deciding that the promotional material was not subject to the use tax in Ohio, the court concluded that the delivery of a gift is completed at the time that the material is deposited in the mail outside of Ohio for delivery to the recipient. Id., 74. We do not find Sharper Image's argument to be persuasive in this case.
A gift "proceeds from a detached and disinterested generosity, . . . out of affection, respect, admiration, charity or like impulses." (Citations omitted.) Commissionerof Internal Revenue v. Duberstein, 363 U.S. 278,285, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). If a transfer proceeds primarily from "`the incentive of anticipated benefit' of an economic nature, Bogardus v. Commissioner,302 U.S. 34, 41, [58 S.Ct. 61, 82 L.Ed.2d 32
(1937)] it is not a gift." Id. "The critical question is the transferror's intention." Fanning v. Conley, 243 F. Sup. 683,688 (D.Conn. 1965), aff'd, 357 F.2d 37 (2d Cir. 1966). In this case, we see no intent by Sharper Image to make gifts of the catalogs to Connecticut residents. In this case, Sharper Image mailed catalogs to Connecticut for the purpose of soliciting recipients to purchase items in the catalogs directly from the retailer. Sharper Image CT Page 1402-K certainly expected to benefit from the mailing of the catalogs to Connecticut residents.
The stipulation of facts in this case recites that Sharper Image gave up the right to withdraw or redirect the catalogs once placed in possession of the post office. Prior to 1913, the post office was considered to be the agent of the addressee when mail was delivered to the post office by the sender since the sender gave up all control and possession once the mail was delivered to the post office. Guardian Nat. Bank v.Huntington County State Bank, 206 Ind. 185,187 N.E. 388, 390, 92 ALR 1056 (1933). However, in 1913, post office regulations were changed to permit a sender of mail, as a matter of right and without the consent of the addressee, to recall and recover the mail. Id. Under these circumstances, the post office became the agent for the sender since the sender exercised absolute and complete control over the mail. Id.
The parties in our case did not stipulate that ownership of the catalogs was to be transferred to the post office. Possession in the post office without evidence of a transfer of title does not constitute ownership. SeeConsolidated Diesel Electric Corporation v. Stamford,156 Conn. 33, 38, 238 A.2d 410 (1968). Based on these considerations, we conclude that Sharper Image retained ownership in the catalogs when Foote 
Davies transferred possession of the catalogs to the post office at the direction of Sharper Image. Connellyv. Waterbury National Bank, 136 Conn. 503, 507,72 A.2d 645 (1950); see Val Pak of Central ConnecticutNorth, Inc. v. Commissioner of Revenue Services, Superior Court, Tax Session, DN CV93-0523267, 12 CONN. L. RPTR. 570 (December 2, 1994) p. 13.
In summary, we find that Sharper Image maintained the incidents of ownership of the catalogs as they passed into Connecticut to the time of delivery to the addressees in Connecticut. We therefore find that Sharper Image "used" the catalogs in Connecticut within the meaning of the Connecticut use tax statute.
Since we find that the use made by Sharper Image of the catalogs meets the three criteria set forth in CT Page 1402-LMagic II, supra, and is thus a "use" within the meaning of the Connecticut use tax statute, the court must next consider the claim of Sharper Image as to whether the imposition of the use tax upon Sharper Image violates the Commerce Clause.
Sharper Image claims that a use tax placed on the catalogs is a tax on interstate commerce in violation of the Commerce Clause of the United States Constitution. The Commerce Clause prevents states from discriminating against interstate commerce. D.H. Holmes Co. v.McNamara, supra, 486 U.S. 29. The four-part test used to evaluate the validity of state taxes vis-a-vis the Commerce Clause is found in Complete Auto Transit, Inc. v.Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326
(1977). Complete Auto abandoned the idea that interstate commerce cannot be taxed in favor of the proposition that, with certain restrictions, interstate commerce may be required to pay its fair share of state taxes. D.H.Holmes Co. v. McNamara, supra, 30-31; see also SFAFolio Collections, Inc. v. Bannon, 217 Conn. 220, 238,585 A.2d 666, cert. denied, 501 U.S. 1223,111 S.Ct. 2839, 115 L.Ed.2d 1008 (1991).
Under Complete Auto's four-part test, a tax will be sustained against a Commerce Clause challenge, so long as the "tax (1) is applied to an activity with a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the State."Quill Corp. v. North Dakota, 504 U.S. ___, 112 S.Ct. 1904,119 L.Ed.2d 91 (1992), citing Complete Auto Transit, Inc.v. Brady, supra, 430 U.S. 279.
Sharper Image concedes that the last three prongs of the Complete Auto test are satisfied. (See Transcript of Hearing, November 8, 1994, p. 34). Our inquiry under Complete Auto therefore leads us to consider only the first element of the test, requiring a showing of substantial nexus. Where a party has no presence or nexus in a state, the state is prohibited from placing a tax on that party's stream of interstate commerce. See Quill Corp. v. North Dakota, supra,119 L.Ed.2d 105-107; see also National Bellas Hess, Inc. v. Departmentof Revenue of Illinois, 386 U.S. 753, 87 S.Ct. CT Page 1402-M 1389, 18 L.Ed.2d 505 (1967).
Sharper Image maintains two retail stores in Connecticut. The products advertised for sale in Sharper Image's catalogs are for sale both by mail or phone order and in general at the Connecticut stores. Sharper Image acknowledges that it has nexus in Connecticut for the purpose of collecting sales and use tax on sales made at its stores in Connecticut and also on its mail order sales from Connecticut residents. However, Sharper Image denies that it has nexus for the purpose of imposing a use tax on the catalogs mailed from out of state to in-state residents as a completely different activity from that of in-state sales.
The issue of nexus was raised in Cally Curtis Co. v.Groppo, 214 Conn. 292, 572 A.2d 302, cert. denied,498 U.S. 824, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990), where the plaintiff, a California corporation, was engaged in the business of selling, leasing and distributing video tapes for personnel training purposes. Cally Curtis engaged in the sale and rental of video tapes to customers in Connecticut. None of the rentals exceeded three days. The court in Cally Curtis concluded that the mere presence of video tapes in Connecticut for three days was not sufficient to establish a nexus with Connecticut for the purpose of collecting a use tax. However, the court did acknowledge that where the seller has local retail stores in the taxing state, a sufficient nexus could be found to exist. Id., 298, citing Nelson v. Sears, Roebuck Co.,312 U.S. 359, 61 S.Ct. 586, 85 L.Ed. 888 (1941); NationalGeographic Society v. California Equalization Board,430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977); L.L.Bean, Inc. v. Department of Revenue, 516 A.2d 820, 824
(Pa.Commw. 1986).
Following the issue of nexus in Nelson v. Sears,Roebuck Co., supra, the Supreme Court affirmed the Iowa court's finding that having a store in the state provided a sufficient nexus to require Sears to collect a use tax on all mail order sales to Iowa residents. Similarly, in National Geographic Society v. CaliforniaEqualization Board, supra, the Supreme Court affirmed the California Supreme Court's conclusion that the presence of two offices in California provided a CT Page 1402-N sufficient nexus to require the plaintiff to collect a use tax made on mail order sales from its Washington, D.C. office to California residents. In L.L. Bean, Inc. v.Department of Revenue, supra, the court refused to require L.L. Bean to collect a use tax on mail order sales made solely through a catalog mailed from out of state where L.L. Bean maintained no presence in Pennsylvania to form a nexus with that state. See alsoSFA Folio Collections, Inc. v. Bannon, supra, 217 Conn. 220. (No nexus found for purpose of collection of sales and use tax where mail order company had no retail stores or other presence in Connecticut.)
We recognize that Cally Curtis, Nelson v. Sears,Roebuck Co., National Geographic, and L.L. Bean all deal with the issue of nexus in the context of collecting a use tax versus the imposition of a use tax. However,D.H. Holmes, a tax imposition case, relied upon the "collection" cases of National Bellas Hess and NationalGeographic to analyze and resolve the issue of nexus in Louisiana. D.H. Holmes Co. v. McNamara, supra,
486 U.S. 33-35.
Sharper Image, in arguing against nexus, makes the distinction between maintaining the two stores in Connecticut and having a separate activity such as the mail order business. A similar argument was made inNational Geographic that there must not only be a nexus between the seller and the state, but also a nexus between the seller's activity being taxed and the state. National Geographic p. 560. This argument was rejected by the Court in National Geographic Society v.California Equalization Board, supra, 430 U.S. In NationalGeographic, the plaintiff maintained two offices in California to solicit advertising copy for its monthly magazine, the National Geographic Magazine. However, the two offices were separate and independent from the mail order business that the plaintiff operated from Washington, D.C. with customers from California. The plaintiff argued that its mail order business was separate and apart from the two offices in California and therefore no nexus existed in California as to the activity of the mail order business. The Court in National Geographic concluded that where the plaintiff maintained a continuous presence in CT Page 1402-O California, though different from the mail order business, this presence provides the adequate nexus to require the plaintiff to collect a use tax on all mail order sales made to California residents. Id., 562.
The determination of whether or not Sharper Image has a link or nexus to Connecticut is a factual determination.Cally Curtis Co. v. Groppo, supra, 214 Conn. 298. We find that Sharper Image's distribution of catalogs advertising items available for sale at its stores in this state is sufficiently related to its physical presence in the state to establish a nexus for purposes of imposing a use tax upon the distribution of the catalogs in Connecticut. See D.H. Holmes Co. v. McNamara,supra, 486 U.S. 32-33. With two retail stores in Connecticut, catalogs mailed from out of state for in-state and out-of-state mail order purchases, as well as Sharper Image's acknowledgement of nexus for the purpose of collecting sales and use tax, we agree with the commissioner that "[t]here is `nexus' aplenty here."Id., 33.
In summary, we conclude that the activities of Sharper Image fully meet the four-prong test set out in Complete Auto, and therefore, the imposition of a tax on the catalogs mailed to Connecticut residents does not violate the Commerce Clause of the United States Constitution.
Having concluded that Sharper Image's mailing of catalogs from out of state to Connecticut comes within the statutory definition of "use" in § 12-407(5), and having concluded that the imposition of this use tax does not violate the Commerce Clause, we hold that Sharper Image is subject to the payment of the Connecticut use tax imposed on the purchase price of the catalogs mailed to Connecticut residents pursuant to General Statutes § 12-411.
Since the parties have stipulated to the amounts, we find that the principal amount of taxes due the commissioner is $52,466.70 with interest to date of this judgment. As to the penalty imposed by the commissioner, the penalty could have been levied only if the taxpayer was negligent or intentionally disregarded CT Page 1402-P the tax laws of the State of Connecticut. SanitaryServices Corporation v. Commissioner, Superior Court, Tax Session, DN CV90-0387476 (June 22, 1994) p. 12. We cannot make such a finding. The issues raised by Sharper Image are finely drawn and hotly contested in many jurisdictions. We find no negligence on the part of the taxpayer nor any intent to disregard the tax laws. "Where an honest difference of opinion exists between the taxpayer and the commissioner on an interpretation of a tax statute, we cannot say that the difference of opinion rises to the level of negligence or intentional disregard of the tax law." Id., 13. We therefore consider it inappropriate to impose a penalty on Sharper Image.
Accordingly, judgment may enter in favor of the commissioner for the principal amount of the tax. $52,466.70, plus interest to the date of judgment.